**Affirmed; Opinion Filed March 12, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-00968-CV

### DAVID SCOT LYND, Appellant
### V.
### BASS PRO OUTDOOR WORLD, INC., Appellee

**On Appeal from the County Court at Law No. 3**
**Dallas County, Texas**
**Trial Court Cause No. CC-08-9862-C**

## MEMORANDUM OPINION
Before Justices O'Neill, Myers, and Brown
Opinion by Justice Myers

On our own motion, we withdraw the opinion of January 28, 2014 and vacate the judgment of that date. The following is the opinion of this Court.

David Scot Lynd appeals the trial court's judgment that he take nothing on his claims against Bass Pro Outdoor World, Inc. and imposing a permanent injunction against him. Lynd brings thirty-three issues on appeal.[1] We affirm the trial court's judgment.

---

[1] These are the issues contained in the body of Lynd's appellant's brief. The appendix to Lynd's brief appears to contain additional argument as well as citations to the record. We do not consider any issues, arguments, or citations to the record or authorities presented in the appendix that do not also appear in the brief itself. *See* TEX. R. APP. P. 38.1(k)(2) ("Items should not be included in the appendix in attempt to avoid the page limits for the brief."); *Gleason v. Isbell*, No. 14-03-00166-CV, 2004 WL 1205784, *1 n.2 (Tex. App.—Houston [14th Dist.] June 3, 2004, pet. denied) (mem. op.) ("We respectfully decline to consider the six additional issues contained within the appendices to appellant's brief.").

## BACKGROUND

Lynd filed suit against Bass Pro on November 14, 2008 (the 2008 case), alleging that on November 16, 2006, a Bass Pro employee negligently operated a forklift in the parking lot of the Bass Pro store in Garland and damaged Lynd's 1991 pickup truck. Lynd sought monetary damages for the cost to repair the truck and for his lost wages as a result of the accident. During the pretrial litigation, Lynd was represented by attorney Robert Fitzgerald. The case was set for trial on June 29, 2010. On May 28, 2010, Fitzgerald moved to withdraw from representing Lynd; however, the trial court did not rule on this motion. On June 28, 2010, the day before the trial setting, Fitzgerald filed a motion for continuance, stating Lynd needed time to find a new attorney and that Lynd desired to conduct further written discovery.

On June 29, 2010, the parties appeared for trial with Fitzgerald representing Lynd, and the trial court denied the motion for continuance. Before the trial began, the parties announced in open court that they had reached a settlement requiring Bass Pro to pay Lynd $1500.[2] Lynd signed a settlement agreement on July 15, 2010, cashed the $1500 check, and the case was dismissed on the parties' joint motion on July 29, 2010.

The settlement agreement released Bass Pro and its "subsidiaries, related and affiliated companies, corporations and entities, insurers, past or future stockholders, officers, directors employees, agents, servants, legal representatives, attorneys, component part suppliers, successors, and assigns, as well as all other persons, firms, or corporations in privity with same" from all claims in any way related to the incident.

On September 8, 2011, Bass Pro filed a motion to enforce the settlement agreement and request for injunctive relief (the 2011 litigation). This pleading alleged that after the settlement,

---

[2] At the time, Lynd's vehicle was worth only $1200 or $1300. The settlement exceeded the value of the vehicle by at least $200. Lynd's counsel announced he was waiving all fees for the case.

Lynd violated the settlement agreement by contacting Bass Pro's employees and telling them the settlement was not valid, that he demanded additional compensation, being "aggressive and threatening" to Bass Pro's employees, stating he will "own Bass Pro" if he is not properly compensated, threatening to "show up on the doorstep of the founder of Bass Pro if he needs to," bothering employees at their homes, calling the president of Bass Pro at his home, and sending a letter to the president at his home. Bass Pro also alleged Lynd violated the terms of the settlement agreement by sending an ex parte letter to the trial court stating Bass Pro obtained the "settlement and dismissal by 'fraud upon the court' and misrepresented fact statements to the court." Bass Pro asked that Lynd be restrained from contacting Bass Pro and its employees, insurers, and attorneys regarding the incident of damage to Lynd's truck; prohibit Lynd from going within 100 feet of any Bass Pro retail store, corporate headquarters, or within 100 feet of the residences of John Morris (Bass Pro's founder and chairman of the board of directors), Jim Hagale (Bass Pro's president), or of any other Bass Pro employee, officer, or director. On October 7, 2011, the trial court signed a fourteen-day temporary restraining order granting the injunctive relief Bass Pro requested.

On October 21, 2011, following a hearing, the trial court signed a preliminary injunction imposing the same injunctive relief as the temporary restraining order as well as prohibiting Lynd from going within 100 feet of the office or residence of any of Bass Pro's attorneys.

On November 22, 2011, Lynd, pro se, filed a response to the request for enforcement and for injunctive relief, requested that the court enter a decree cancelling the parties' July 15, 2010 settlement agreement and vacate the July 29, 2010 judgment dismissing the case, and asked that the court impose sanctions on Bass Pro and its counsel "for abuse of process and frivolous filing," as well as for "[f]raud, violation of the non disclosure, and misleading the court, and

plaintiff." Lynd alleged that certain of Bass Pro's discovery responses in the 2010 suit were false and constituted fraud.

Following a trial before the court, the trial court entered a permanent injunction against Lynd and denied his requests to cancel the settlement agreement, to vacate the July 29, 2010 judgment, and to impose sanctions against Bass Pro and its counsel. Lynd now appeals that judgment.

## PRO SE PARTIES

Lynd is pro se before this Court. We liberally construe pro se pleadings and briefs. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). However, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn,* 573 S.W.2d 181, 184–85 (Tex. 1978); *Washington*, 362 S.W.3d at 854. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.,* 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999, pet. denied).

## STANDARD OF REVIEW

This case was tried before the court. The parties did not request findings of fact and conclusions of law, and the trial court did not make findings of fact and conclusions of law. When no findings of fact and conclusions of law were requested or filed, it is implied that the trial court made all findings necessary to support its judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *Niskar v. Niskar*, 136 S.W.3d 749, 753 (Tex. App.—Dallas 2004, no pet.). The judgment will be upheld on any legal theory that finds support in the evidence. *Niskar*, 136 S.W.3d at 754.

We review the implied findings of fact for legal and factual sufficiency, and we review the trial court's implied legal conclusions de novo. *In re M.P.B.*, 257 S.W.3d 804, 808 (Tex.

–4–

App.—Dallas 2008, no pet.). When addressing a legal sufficiency challenge, we view the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v.* Wilson, 168 S.W.3d 802, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). In a factual sufficiency review, we view all the evidence in a neutral light and set aside the finding only if the finding is so contrary to the overwhelming weight of the evidence such that the finding is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Morris v. Wells Fargo Bank, N.A.*, 334 S.W.3d 838, 842 (Tex. App.—Dallas 2011, no pet.).

## LYND'S ISSUES

Lynd's issues fall into four categories. Some of the issues concern asserted errors in the 2008 case. Lynd did not appeal the judgment dismissing that case, and it is now final and is not subject to attack except by bill of review. Second, other of Lynd's issues assert that the settlement agreement leading to the dismissal of his lawsuit was void because he was fraudulently induced to sign it. Third, some issues involved the sufficiency of the evidence to support the elements for an injunction. The fourth category of issues concerns additional matters in the 2011 litigation. We discuss each of these categories in turn.

## ISSUES CONCERNING THE 2008 CASE

Lynd's first three issues assert error in the 2008 case. Because Lynd did not file a motion for new trial or appeal the judgment, the trial court's plenary jurisdiction expired after thirty days, that is, after August 28, 2010. *See Emerald Oaks Hotel/Conference Ctr., Inc. v. Zardenetta*, 776 S.W.2d 577, 578 (Tex. 1989) (per curiam); *In re New Hampshire Ins. Co.*, No. 02-12-00281-CV, 2012 WL 3264392, *1 (Tex. App.—Fort Worth Aug. 13, 2012, orig.

proceeding) (mem. op.). Thereafter, the judgment could not be set aside "except by bill of review for sufficient cause." TEX. R. CIV. P. 329b(f). The trial court dismissed the 2008 case on July 29, 2010, and Lynd brought his claim to vacate the dismissal 481 days later, on November 22, 2011. Because the trial court's plenary power over the 2008 case had expired, the July 29, 2010 judgment could not be vacated except through a bill of review. Lynd's pleading in this case did not include a petition for bill of review.

Lynd's first issue is, "Can a court force a plaintiff to trial when counsel of record[] testifies he is not ready?" Lynd also states in his brief that his attorney "clear and concisely made the court aware that not only was he not ready but had never prepared." Lynd does not cite to the record, and the record does not support his assertion that his attorney was "not ready [and] had never prepared." Regardless of whether Lynd's counsel was prepared, this error, if any, affected only the judgment in the 2008 case. Accordingly, that issue was final in 2010 and may not be considered in this appeal. *See* TEX. R. CIV. P. 329b(f). We overrule Lynd's first issue.

Lynd's second issue is, "Can [a] Judge incorrectly issue a ruling/statement from the bench claim fact [sic], about what can be recovered prior to evidence being presented to induce a settlement?" This issue concerns the trial court's statements from the bench at the July 29, 2010 hearing. As the parties explained to the court what the case was about, Bass Pro's counsel mentioned that Bass Pro had offered more than the pickup's Blue-Book value as a settlement offer. The court stated that the value of the truck was the most Lynd was likely to receive from a jury. The court told Lynd that based on the court's extensive experience as a practicing lawyer and as a judge, accepting the settlement "will be your last chance to get more than the value of the truck. After this, you'll be throwing your money away." Lynd replied that, "A thousand dollars is an insult." The court responded, "Well, you're going to be insulted more by the jury. . . . So pick your insult." The court also stated, "I'm just telling you what you can get as a

matter of law. And if they're offering you more than the value of the truck, you're not going to get any more." Lynd does not explain how the trial court's statements prevented him from pursuing his lawsuit. Nor does he explain how the statements were incorrect or cite authority showing the trial court's statements were misrepresentations of the law under the facts of his case. We conclude Lynd has not shown the trial court erred. Moreover, any error by the trial court was final after August 28, 2010 and may not be raised in this appeal. *See* TEX. R. CIV. P. 329b(f). We overrule Lynd's second issue.

In his third issue, Lynd asks, "Can a judge order in depth discovery be completed in the hallway of the courthouse?" Lynd asserts that the trial court ordered the parties to conduct discovery in the hallway on the day the case was set for trial. The record of the June 29, 2010 hearing shows Lynd's attorney was seeking the name and contact information of the forklift operator on duty at Bass Pro the day of the accident. An "Unidentified Speaker" in the courtroom said he would try to get that information from Bass Pro's human resources department. The court then said,

> [S]ee if you can't get him subpoenaed for in the morning. And if you talk to him and you don't care what he says, you don't have to use him as a witness. So you don't have to worry about what he says that way. You can talk to him in the hallway.

The court's statement was not an order that the parties complete discovery in the hallway of the courthouse. The statement was that Lynd's attorney could speak to the forklift operator in the hallway the next morning before the trial began and decide whether to call him as a witness. The record does not show that the court ordered the parties to conduct discovery in the hallway. Moreover, any potential error was final after August 28, 2010 and may not be considered in this appeal. *See* TEX. R. CIV. P. 329b(f). We overrule Lynd's third issue.

**FRAUDULENTLY INDUCED CONTRACT**

Many of Lynd's issues contend the settlement agreement is void because he was fraudulently induced into signing the settlement agreement.

In his twenty-third issue, Lynd asserts that settlement agreements are governed by contract law. We agree. *See Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996); *Cadle Co. v. Castle*, 913 S.W.2d 627, 630 (Tex. App.—Dallas 1995, writ denied). In his twenty-fourth issue, Lynd asserts that a settlement agreement "obtain[ed] by a form of fraud" is void. Lynd is correct. "A contract is subject to avoidance on the ground of fraudulent inducement." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 331 (Tex. 2011). The elements for fraudulent inducement are the same as for fraud: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990); *Hoagland v. Butcher*, 396 S.W.3d 182, 190 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). However, neither of these issues asserts the trial court erred. Therefore, even though we agree with the issues' statements of the law, we cannot reverse the trial court's judgment based solely on those issues.

Lynd appears to base his fraudulent-inducement claim on alleged misrepresentations by the trial court and by Bass Pro's counsel. In his thirtieth issue, Lynd contends he was induced to enter into the settlement agreement in the 2008 case by a knowing misrepresentation from the trial court. Lynd asserts the trial court made a misrepresentation when the court, while urging Lynd to accept Bass Pro's settlement offer of $1500, said the maximum damages Lynd could recover was the value of the damaged vehicle. In support of his argument, Lynd cites a case stating that in fraud cases, damages are not limited to economic damages but may include tort

damages and exemplary damages. *See Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998). However, Lynd did not plead a cause of action for fraud in the 2008 case; his only cause of action was for negligence. Thus, *Formosa Plastics* and the cases it cites in support of its decision that damages for fraud are not limited to economic damages are not applicable. Lynd cites no authority showing he would have been entitled to damages exceeding the value of his truck in the 2008 suit. Accordingly, we conclude he has not shown the trial court made a material misrepresentation to him causing him to sign the settlement agreement.[3] We overrule Lynd's thirtieth issue.[4]

Lynd's fourth, fifth, sixth, seventh, twenty-eighth, and twenty-ninth issues concern what he asserts was a misrepresentation by Bass Pro's counsel at the June 29, 2010 hearing. Lynd appears to assert that Bass Pro committed fraud at that hearing by falsely stating that the employees who investigated Lynd's damages claim were no longer employed by Bass Pro and that the company did not know where they were.

The June 29, 2010 hearing was admitted into evidence at the trial of this case. At that hearing, which ended with the settlement, the trial court asked Lynd's counsel, Robert Fitzgerald, what additional discovery he needed from Bass Pro. Fitzgerald told the court that Bass Pro had disbanded its risk-management department, that the employees who had investigated Lynd's accident claim were gone, and that Lynd had no addresses or way of contacting those people to learn what they knew and what they did to investigate his claim. Fitzgerald did not request information on these individuals. Instead, Fitzgerald stated he had "narrowed it down to just the employees who were working forklifts that day because that's the

---

[3] We do not conclude the trial court was correct in its statement in the 2008 case that Lynd could not recover damages exceeding the value of his vehicle. Our conclusion is limited to observing that Lynd has not shown the trial court's statement was incorrect.

[4] In his brief, Lynd also asserts that in the 2011 litigation, the trial court made misrepresentations about the law. Because these representations were made years after Lynd accepted the settlement agreement, Lynd cannot have relied on them in 2010 when agreeing to the settlement.

nature of the claim." He stated that although Bass Pro had provided information about one forklift driver, Lynd had told Fitzgerald he had seen three or four forklift operators in the parking lot on the day of the accident. Fitzgerald stated he wanted "some information where we can find them." The court asked if that was all the information Fitzgerald wanted, and Fitzgerald stated, "Yeah, and to the core of it, judge, is we would like an opportunity to talk to these people." Bass Pro's counsel, Jeffrey Cox, stated he had given Fitzgerald his entire file with information about all the forklift operators. Cox stated that it had provided the information it had about Carl Oversham, the forklift operator on duty at the store that day. Cox also stated that Bass Pro had reorganized and that the risk-management departments at three stores were eliminated. Fitzgerald asked where the Garland store's manager of loss prevention, Robert Wisdom, was, and Cox said Bass Pro did not know because Wisdom had been gone for about three years. Cox then provided the telephone number for Oversham so Fitzgerald could talk to him and decide whether to call him as a witness. The court then took a break; when court resumed, the parties announced their settlement.

During the evidentiary hearings on Bass Pro's request for injunctive relief, Rodney Thoms testified. Thoms was the security supervisor for Bass Pro's corporate headquarters in Springfield, Missouri. Thoms testified that in December 2006, Lynd began calling the risk-management department of Bass Pro's corporate headquarters in Springfield, Missouri, demanding payment for his truck and stating "he was going to arrive on . . . [the] doorstep" of John Morris, the company's founder. Thoms stated Lynd called Bass Pro at least twenty times within one week. Thoms filed a report with the Springfield police about Lynd's statements. Thoms testified that on June 2, 2011, Lynd called Bass Pro's risk-management department "telling them that the lawsuit was void . . . [and] [t]hat he would own Bass Pro when it was done." Thoms stated that when he prepared his affidavit for Bass Pro's application for

–10–

temporary restraining order, he went through the security files from "that time period," which appears to refer to December 2006. Thoms testified that those security files were not turned over in discovery.

Thoms also testified that the risk-management department had been "severely reduced, and so we just have a few people at corporate now who handle it." He testified that the loss-prevention groups at the stores were "rolled over into the retail admin group." Thoms testified that he did not know if any of the same employees working in the loss-prevention department before it was converted into "the retail admin group" were still employed by Bass Pro: "I know some of them stayed, and some of them didn't. Due to the economy, there was a lot of deep cuts had to be made, and, you know, a lot of deep cuts were done." Thoms testified he did not know where Robert Wisdom was working.

Lynd asserts that Thoms's testimony shows Bass Pro misrepresented at the June 29, 2010 hearing that the employees about which Lynd sought discovery were no longer employed by Bass Pro. Lynd states in his brief: "Lynd clearly was seeking discovery from those parties who handled his initial claim at the corporate office, Bass [P]ro clearly [kept] stating they no longer worked there, and the Court [kept] stating to Lynd it didn't matter. Then Bass Pro's own witness clearly stated that some if not all were still employed." (Emphasis omitted.)

We disagree with Lynd's interpretation of the evidence. At the June 29, 2010 hearing, Fitzgerald, at the most, was seeking discovery of the identity of any employees at the Garland Bass Pro store who investigated Lynd's claim and the identities of any employees who may have witnessed the accident, such as the forklift operators. Viewing the evidence in the light most favorable to the judgment, the trial court could interpret Thoms's testimony as stating that the risk-management department at the Garland store was eliminated. Thoms also testified that the corporate headquarters' risk-management department investigated Lynd's act of making the

–11–

2006 telephone calls to it demanding compensation for his damaged vehicle and investigated Lynd's statement that he would arrive on the doorstep of Bass Pro's founder. The record does not show that any Bass Pro employee at the corporate office investigated Lynd's claim for damages. The record also does not show that Fitzgerald sought discovery of any employees at the corporate office or that Thoms "stated that some if not all" of the Bass Pro employees who investigated Lynd's damages claim "were still employed" by Bass Pro.

Lynd also complains that Thoms's name was not disclosed in the discovery of the 2008 case. However, nothing in the record shows that Thoms investigated Lynd's claim for damages. Instead, the record shows Thoms investigated the reports that Lynd was telephoning the corporate risk-management department about the accident and later about the settlement and about Lynd's threatening to arrive on Morris's doorstep. Nothing in the record shows any information Thoms had was relevant to Lynd's 2008 suit against Bass Pro for damaging his vehicle.

We conclude the evidence is legally and factually sufficient to support the trial court's implied finding that Lynd failed to prove that Bass Pro made a material misrepresentation to him in discovery or at the June 29, 2010 hearing. We overrule Lynd's fourth, fifth, sixth, seventh, and twenty-eighth issues, and we overrule the twenty-ninth issue insofar as it concerns Lynd's assertion that the settlement agreement was void due to fraud in the inducement.

In his thirty-first issue, Lynd contends the settlement agreement was rendered void by "betrayal by own counsel." Lynd's brief fails to explain how Fitzgerald "betrayed" him in the 2008 suit. Lynd cites *Alexander v. Hagedorn*, 226 S.W.2d 996 (Tex. 1950). In that case, the supreme court stated that extrinsic fraud would entitle a complainant to relief from a final judgment, even where the extrinsic fraud resulted from betrayal by the complainant's attorney. *See id.* at 1001. *Alexander* concerned extrinsic fraud that must be proven in a bill of review, not

fraudulent inducement to set aside a contract. *See id.* Lynd has not brought a bill of review. Moreover, the supreme court has also concluded that in a bill of review, even if a complainant alleges his attorney's wrongful act caused an adverse judgment, the complainant must still prove the opposing party's extrinsic fraud. *King Ranch v. Chapman*, 118 S.W.3d 742, 752 (Tex. 2003). As discussed above, the evidence is sufficient to support the implied findings that Lynd failed to prove Bass Pro committed fraud. We overrule Lynd's thirty-first issue.

## SUFFICIENCY OF THE EVIDENCE TO SUPPORT INJUNCTION

In his sixteenth, seventeenth, and eighteenth issues, Lynd asserts the trial court erred by finding Bass Pro met its burden of proof on the elements for an injunction. To obtain injunctive relief, a party must generally show: (1) the existence of a wrongful act; (2) the existence of imminent harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Lagos v. Plano Econ. Dev. Bd., Inc.*, 378 S.W.3d 647, 650 (Tex. App.—Dallas 2012, no pet.); *Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 875 (Tex. App.—Dallas 1989, no writ).

In his sixteenth issue, Lynd contends Bass Pro presented insufficient evidence to support the trial court's award of injunctive relief.[5] In this case, although the evidence did not show that Lynd ever expressly requested additional money from Bass Pro, the trial court could conclude that Lynd's telephone calls to Hagale and the corporate headquarters complaining of fraud in the settlement agreement and stating the agreement was void and that he would end up owning Bass Pro were implicit demands for additional compensation. The trial court could conclude that these implied demands were wrongful acts in violation of Lynd's promise in the settlement agreement to release and discharge Bass Pro and its officers, directors, and employees from any

---

[5] Lynd's issue reads, "If any of the four requirements for an [i]njunction are not meet [sic], is the injunction ordered declared void and dissolved?" We interpret this issue as a challenge to the sufficiency of the evidence to support the injunction.

liability from "the Incident in Question." Bass Pro presented evidence of imminent harm, namely, the evidence of Lynd's telephone calls to the corporate headquarters and to Hagale complaining of the settlement.

An injury is irreparable when the applicant cannot be compensated by damages or when damages cannot be measured by any certain pecuniary standard. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Thoms testified that the problem of Lynd telephoning Bass Pro's employees about the settlement could not be solved by an award of monetary damages.

"An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Wilson N. Jones Mem'l Hosp. v. Huff*, 188 S.W.3d 215, 218 (Tex. App.—Dallas 2003, pet. denied). However, "if damages cannot be calculated, or if the defendant will be unable to pay damages, there is no adequate remedy at law." *Alert Synteks, Inc. v. Jerry Spencer, L.P.*, 151 S.W.3d 246, 254 (Tex. App.—Dallas 2004, no pet.). In this case, the evidence is legally and factually sufficient to support the trial court's implied finding that Bass Pro's damages could not be calculated. After considering all the evidence, we conclude sufficient evidence supports the trial court's implied findings on the elements for awarding injunctive relief. We overrule Lynd's sixteenth issue.

In his seventeenth issue, Lynd contends the trial court erred by awarding injunctive relief because Bass Pro presented evidence of only speculative harm, not imminent harm. The purpose of injunctive relief is to halt wrongful acts that are threatened or are in the course of accomplishment and not to grant relief against past actionable wrongs or to prevent the commission of wrongs not imminently threatened. *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 853 (Tex. App.—Austin 2002, pet. denied). "An injunction will not lie to prevent an alleged threatened act, the commission of which is speculative and the injury from which is purely conjectural." *Id.* (quoting *Markel v. World Flight, Inc.*, 938 S.W.2d

–14–

74, 80 (Tex. App.—San Antonio 1996, no writ)). In this case, Lynd's violations of the settlement agreement continued until the entry of the temporary restraining order. Lynd argued to the trial court that he was not subject to the settlement agreement because it was void due to fraudulent inducement. As discussed above, Lynd failed to show that the settlement agreement was void. The evidence showed Lynd continued to contact Bass Pro's personnel complaining of the settlement agreement and implicitly seeking additional compensation until ordered not to do so in the temporary restraining order and preliminary injunction. Nothing in the evidence showed that Lynd would not immediately resume contacting Bass Pro's personnel complaining of the settlement if the injunction was lifted, which would result in continued violations of the settlement agreement. Based on the evidence before it, the trial court could find a likelihood that Lynd would continue violating the settlement agreement unless the permanent injunction was entered. Accordingly, the trial court did not err by implicitly finding that the harm was imminent and not speculative. We overrule Lynd's seventeenth issue.

In his eighteenth issue, Lynd asserts that Bass Pro had an adequate remedy at law, namely, its motion to enforce the settlement agreement. Bass Pro's pleading was styled, "Motion to Enforce Settlement Agreement, Application for Temporary Restraining Order, Request for Temporary Injunction, & Request for Permanent Injunction." However, the only relief requested was injunctive relief. Therefore, the "Motion to Enforce Settlement Agreement" was not brought as a remedy at law. *See Minexa Ariz., Inc. v. Staubach*, 667 S.W.2d 563, 567 (Tex. App.—Dallas 1984, no writ) (adequate remedy at law barring injunctive relief is one where "damages are adequate to compensate the plaintiffs for any wrong committed by the defendant and . . . the damages are subject to measurement by a certain pecuniary standard"). As discussed above, Bass Pro met the requirement of no adequate remedy at law by presenting evidence that Bass Pro's damages could not be calculated. The record contains no evidence that Bass Pro's

–15–

damages could be calculated or that monetary damages would provide a remedy as "complete, practical, and efficient to the prompt administration of justice as is equitable relief." *Huff*, 188 S.W.3d at 218. We overrule Lynd's eighteenth issue.

## REMAINING ISSUES CONCERNING THE 2011 LITIGATION

In his twenty-ninth issue, Lynd asserts that the fraud in the inducement of the settlement of the 2008 case was relevant to Bass Pro's motion to enforce the settlement. As discussed above, Lynd failed to prove Bass Pro fraudulently induced Lynd to sign the settlement agreement. We overrule the twenty-ninth issue.

In his eighth, eleventh, twelfth, thirteenth, fourteenth, nineteenth, and twenty-second issues, Lynd complains of the injunction's specifically naming Hagale and Morris as protected persons in the injunction even though they were not parties to the suit for injunction. Lynd cites no authority in support of this assertion, nor does he explain why Bass Pro could not seek an injunction to protect Morris, its founder and chairman of the board of directors, and Hagale, its president. Rule 38.1 of the Texas Rules of Appellate Procedure requires that an appellant's brief include "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). We conclude these issues are not properly briefed and any error is waived. We overrule Lynd's eighth, eleventh, twelfth, thirteenth, fourteenth, nineteenth, and twenty-second issues.

In Lynd's ninth and tenth issues, he contends a suit for injunction may not be filed to enforce a contract, citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002). In *Butnaru*, the supreme court stated, "generally, a court will not enforce contractual rights by injunction, because a party can rarely establish an irreparable injury and an inadequate legal remedy when

damages for breach of contract are available." *Id.* at 211.  In this case, however, the trial court implicitly concluded that an award of legal damages against Lynd would not be an adequate remedy for Lynd's alleged breach of the settlement agreement by contacting Bass Pro's president, chairman, and employees about his claim.  *See id.* (trial court did not abuse discretion by awarding injunctive relief in contract case when plaintiff did not have adequate legal remedy). We overrule Lynd's ninth and tenth issues.

In his fifteenth, twenty-first, twenty-fifth, twenty-sixth, and twenty-seventh issues, Lynd contends he was denied discovery.  In his twenty-sixth and twenty-seventh issues, Lynd argues the trial court erred by denying him discovery from Bass Pro, including requests for admissions from Hagale and Morris.  Lynd served the requests for admissions on Jeffrey Cox, Bass Pro's counsel.  Bass Pro objected to the requests for admissions from Hagale and Morris because they were not parties.  A party may request admissions only from other parties.  *See* TEX. R. CIV. P. 198.1 (" A party may serve on another party . . ."); *see also In re Estate of Ayala*, 986 S.W.2d 724 (Tex. App.—Corpus Christi 1999, no pet.) (nonparty's response to requests for admissions are "legal nullities, absent another affirmative act by the non-party").  Hagale and Morris were not parties to Bass Pro's suit for injunction and enforcement, nor did Lynd name them as defendants in his suit to set aside the settlement agreement.  Accordingly, we conclude the trial court did not err by not deeming admitted the requests for admissions Lynd addressed to Hagale and Morris.  We overrule Lynd's twenty-sixth and twenty-seventh issues.

In his twenty-first issue, Lynd contends the trial court erred by ruling that Hagale and Morris were not subject to subpoena.  Hagale and Morris reside in Missouri, which the trial court observed was outside the range for subpoenas.  *See* TEX. R. CIV. P. 176.3 ("A person may not be required by subpoena to appear or produce documents or other things in a county that is more

–17–

than 150 miles from where the per person resides or is served."). We conclude the trial court did not err by denying subpoenas to Hagale and Morris. We overrule Lynd's twenty-first issue.

Lynd contends in his twenty-fifth issue that discovery could not be considered complete because the trial court refused to rule on a motion to compel discovery. Lynd's motion to compel sought to require Bass Pro to answer interrogatories and requests for admissions to which Bass Pro had objected. The trial court went through many of the interrogatories and requests for admissions and ruled on Bass Pro's objections. The parties then agreed the trial court could take the remaining issues under submission. Lynd does not identify which of the remaining interrogatories and requests for admissions the trial court failed to rule on, nor does he explain how the trial court's failure to compel Bass Pro to answer caused him harm. *See In re M.S.*, 115 S.W.3d 534, 538 (Tex. 2003) (appellant's burden to show trial court's error prejudiced appellant); *Meachum v. Comm'n for Lawyer Discipline*, 36 S.W.3d 612, 615 (Tex. App.—Dallas 2000, pet. denied) (appellant's burden to establish reversible error). We overrule Lynd's twenty-fifth issue.

In his fifteenth issue, Lynd generally asserts that discovery is mandatory in an equitable suit. Lynd does not explain what discovery he was denied beyond that discussed above, nor does he cite to the record or to any authorities in support of this issue. Accordingly, we conclude it is improperly briefed, it presents nothing for us to review, and any error is waived. *See* TEX. R. APP. P. 33.1(i); *Huey*, 200 S.W.3d at 854. We overrule Lynd's fifteenth issue.

Lynd states in his thirty-second issue, "Is Lynd[']s measure of damages due to fraud, inducement and detrimental reliance become the full amount of the original suit?" Lynd argues in his brief, "The court was required to enter judgment for Lynd in the full amount of his original damages claimed in the original cause of action, and was entered as evidence by Bass Pro [S]hops in the deposition it entered as evidence." Lynd's pleading in this case requested the

court vacate the 2010 judgment, declare the settlement agreement void and cancelled, and impose sanctions against Bass Pro. Lynd's pleading did not seek an award of damages. We conclude the trial court did not err by failing to award Lynd damages. We overrule Lynd's thirty-second issue.

In his thirty-third issue, Lynd asserts that the trial court erred by denying his offer of case law as evidence. Legal arguments and authorities are not evidence. *Smith v. Montemayor*, No. 03-02-00466-CV, 2003 WL 21401591, *9 (Tex. App.—Austin June 19, 2003, no pet.) (mem. op.). We conclude the trial court did not err by refusing to admit case law into evidence. We overrule Lynd's thirty-third issue.

In his twentieth issue, Lynd argues the trial court abused its discretion by denying him a jury trial at the trial of Bass Pro's application for a permanent injunction. To obtain a jury trial in district or county court, rule of civil procedure 216 requires that a party file a written request for a jury and pay the required fee not less than thirty days before the date set for trial. *See* TEX. R. CIV. P. 216. This time limitation applies equally to the filing of the written request and to the payment of the jury fee. *Huddle v. Huddle*, 696 S.W.2d 895, 895 (Tex. 1985) (per curiam). It is within the discretion of the court to deny a jury trial in the absence of an untimely jury request or payment of a jury fee. *Id.* Even where a party does not timely pay the jury fee, the trial court should accord the right to jury trial if it can be done without interfering with the court's docket, delaying the trial, or injuring the opposing party. *Gen. Motors v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997).

In this case, the trial was on April 25, 2012. The clerk's record shows Lynd requested a jury trial on November 22, 2011, which was timely. However, the record does not show that

Lynd timely paid the jury fee.[6]  On the day of the trial, Lynd told the court he paid the jury fee on the preceding Thursday or Friday, which was four or five days before the trial.[7]  Bass Pro's counsel told the trial court that Bass Pro did not prepare a jury charge and did not prepare for a jury trial.  The trial court then denied Lynd's request for a jury trial.  Lynd's payment of the jury fee four or five days before trial was untimely.  TEX. R. APP. P. 216(b).

In his brief, Lynd asserts the clerk to whom he paid the fee told him he did not have to pay the fee due to his indigence.  That statement is not supported by the record.  At trial, Lynd

---

[6] The discussion in the trial court concerning appellant's payment of the jury fee was as follows:

The Court:  . . . I'm going to strike the jury because there is no jury fee that's been paid.  If you're going—

. . . .

Mr. Lynd:  I have the receipt for the jury fee from the county clerk's office.

The Court:  You do?

Mr. Lynd:  Yes, ma'am, I do.

The Court:  When did you pay it?

Mr. Lynd:  I filed it.  They didn't charge me a fee.  Then when he filed his, they called and said, You still owe a fee.  I came right down there and paid it.  That's when she saw me down there doing it at the time.

The Court:  When did you pay it?

Mr. Lynd:  Thursday or Friday, whatever day it was. . . . That's the first I was notified of it.  They didn't charge me a fee when I filed it.  That's not my fault.

The Court:  It is, actually.  And are you prepared to go forward with the jury trial?

Mr. Lynd:  Yes, I am.

The Court:  I know you are.  Are you?

Mr. McKay [Bass Pro's counsel]:  We would prefer non-jury.  That's what we're requesting.

The Court:  Did you prepare for a jury trial or non-jury trial?

Mr. McKay:  We did not prepare a charge.  We did not prepare for a jury trial because it wasn't properly requested.

The Court:  Then I'm going to find that you're not prepared, and we'll go ahead without the jury.

Mr. Lynd:  Can I object?

The Court:  All right.  Noted.  Next question.

[7] The docket sheet in the clerk's record shows there was a "JURY TRIAL DEMAND" filed on April 20, 2012, five days before the trial.  The docket sheet does not state who filed the jury trial demand, nor does it state that the fee was paid.

said the clerk did not charge him a fee when he filed his request for a jury trial. The record does not show the clerk told Lynd he did not have to pay the fee or that he was indigent. The record on appeal does not show appellant filed an affidavit of indigency in the trial court for this case under rule 145. *See* TEX. R. CIV. P. 145. On July 23, 2012, after Lynd had filed his notice of appeal, he filed an affidavit of indigency, apparently under rule of appellate procedure 20.1, which allows an indigent party to proceed with the appeal without advance payment of costs. *See* TEX. R. APP. P. 20.1(a)(2), (i)(4). But nothing shows Lynd was relieved of the responsibility for paying the jury fee at the time of the trial.[8]

Because Lynd did not timely pay the jury fee and because the trial court could have concluded that granting the request for a jury trial would have injured Bass Pro, we conclude the trial court did not abuse its discretion by denying Lynd a jury trial. We overrule Lynd's twentieth issue.

## CONCLUSION

We affirm the trial court's judgment.


/ Lana Myers//
_____
LANA MYERS
120968F.P05                                                JUSTICE

---

[8] Bass Pro offered into evidence a document filed by Lynd and styled "Bill of Review" in an unrelated case that had attached to it an affidavit of indigency dated June 8, 2010, which was over a year before Bass Pro filed its petition for injunctive relief.

–21–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID SCOT LYND, Appellant

No. 05-12-00968-CV          V.

BASS PRO OUTDOOR WORLD, INC.,
Appellee

On Appeal from the County Court at Law
No. 3, Dallas County, Texas
Trial Court Cause No. CC-08-9862-C.
Opinion delivered by Justice Myers.
Justices O'Neill and Brown participating.

 

     We **VACATE** this Court's judgment of January 28, 2014. The following is now the judgment of this Court.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

     It is **ORDERED** that appellee BASS PRO OUTDOOR WORLD, INC. recover its costs of this appeal from appellant DAVID SCOT LYND.

Judgment entered this 12th day of March, 2014.

/Lana Myers/
LANA MYERS
JUSTICE