**John C. SHULL, Appellant,**

v.

**UNITED PARCEL SERVICE, Appellee.**

**No. 04–98–00485–CV.**

Court of Appeals of Texas, San Antonio.

July 7, 1999.

Rehearing Overruled Aug. 24, 1999.

John Shull, San Antonio, pro se.

Kyle C. Watson, Burton D. Brillhart, Godde Casseb Jones Riklin Choate & Watson, P.C., San Antonio, for Appellee.

Before STONE, GREEN and ANGELINI, JJ.

## OPINION

Opinion by: CATHERINE STONE, Justice.

John Shull brought suit against United Parcel Service ("UPS") seeking damages for a computer that Shull contends UPS damaged while shipping. Summary judgment was granted against Shull in the trial court. In nine points of error, Shull challenges the trial court's judgment. Because we conclude that the Carmack Amendment preempts all of Shull's claims except as to actual damages and that he has failed to support his claim for actual damages, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In January of 1994, Shull hired United Parcel Service ("UPS") to deliver Shull's computer and accessories to Micromax. On the shipping receipt, Shull declared the value of the computer at $2000. UPS was unable to deliver the package and returned it to Shull. Shull claims that the computer was damaged by UPS in the course of shipment and now seeks damages.

Shull filed suit on July 19, 1994, and UPS answered on October 12, 1994. Shull obtained a post-answer default judgment on August 22, 1995 when UPS failed to appear at the initial hearing. UPS contends that it was never given notice of the hearing and that it did not learn of the default judgment until October 25, 1995. UPS filed a motion for new trial and an evidentiary hearing was held on November 3, 1995. The trial court set aside the default judgment and granted a new trial.

UPS filed a motion for summary judgment on March 7, 1996. The trial court granted the motion and found that Shull's claims originating on or subsequent to the date of completion of the shipping record were limited to relief provided under the Carmack Amendment. On March 19, 1998, UPS filed a second motion for summary judgment. The trial court granted the motion and found that all of Shull's state law claims, including claims for punitive damages and attorneys' fees, were barred. Shull appeals from this judgment.

## SUMMARY JUDGMENT

The appellate court reviews an order for summary judgment *de novo*. Summary judgment is proper when the movant establishes that there are no genuine issues of material fact such that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a genuine issue of material fact is at issue, we view as true all evidence favorable to the non-movant and indulge every reasonable inference, and resolve all doubts, in its favor.

*Nixon,* 690 S.W.2d at 548–49; *Cedillo v. Gaitan,* 981 S.W.2d 388, 390 (Tex.App.—San Antonio 1998, no pet.).

## CARMACK AMENDMENT

In his first points of error, Shull complains that UPS has not met the requirements of the Carmack Amendment necessary to limit liability, and that even if applicable, the statute does not preempt his state and federal claims. The Carmack Amendment, 49 U.S.C.A. § 14706 (West Supp.1998), establishes a uniform national liability policy for interstate carriers, and it is well settled that the Amendment preempts state common law actions. *See Hughes Aircraft Co. v. North American Van Lines,* 970 F.2d 609, 613 (9th Cir. 1992). "The Carmack Amendment ... subjects a motor carrier transporting cargo in interstate commerce to absolute liability for 'actual loss or injury to property.'" *Id.* at 611. Liability may be limited, however, to the value established by written declaration of the shipper or by agreement. *See id.* In order to limit liability in this manner, the carrier must (1) maintain a tariff in compliance with the requirements of the Interstate Commerce Commission; (2) give the shipper a reasonable opportunity to choose between two or more levels of liability; (3) obtain the shipper's agreement as to his choice of carrier liability limit; and (4) issue a bill of lading prior to moving the shipment that reflects any such agreement. *Hughes Aircraft Co.,* 970 F.2d at 611–12.

Shull has not controverted UPS' evidence showing that UPS maintained a tariff in compliance with the requirements of the ICC or that UPS issued a bill of lading prior to moving the shipment reflecting the agreement. Accordingly, the focus of this point of error lies within the second and third factors. Shull argues that because UPS placed a value cap on computer equipment, he was not given a reasonable opportunity to choose between two or more levels of liability. Shull also com-

plains that UPS employees could not explain particular phrases in the bill of lading nor did they know how to comply with the Carmack Amendment. As a result, he was not sufficiently informed to make a decision regarding liability.

The Carmack Amendment only requires that a shipper be given a reasonable opportunity to choose between two levels of liability or more. "A reasonable opportunity to choose between different levels of coverage means that the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well informed choice." *Id.* at 612 (citing *Bio–Lab, Inc. v. Pony Express Courier Corp.,* 911 F.2d 1580, 1582 (11th Cir.1990)). The summary judgment evidence shows that Shull was given the opportunity to declare the value of his computer at whatever value he assessed. There is no indication that Shull was not given adequate options of liability when he could have assessed the value of his computer at whatever cost he saw fit. And while Shull complains that the value cap on computer equipment limited his choice, he does not assert that the value of his equipment was more than the value cap and cannot show how this cap unreasonably limited his choice. *See Shorts v. United Parcel Service,* 1999 WL 118791, *5 (N.D.Tex.1999) (holding that giving a shipper blank space to declare value of package contents was sufficient to limit carrier's liability under the Carmack Amendment). Further, the determination of whether Shull made an informed decision is not dependent on UPS employees' ability to explain particular phrases in the bill of lading or their knowledge of the Carmack Amendment. *See Rohner Gehrig Company, Inc. v. Tri–State Motor Transit,* 950 F.2d 1079, 1085 (5th Cir.1992) (holding that it is error to administer the second and third prongs on the basis of subjective qualities of the shipper or employee, such as sophistication). The evidence clearly shows that Shull was given a reasonable opportunity to choose between levels of liability and that UPS obtained Shull's agreement as to his choice of carrier liability since it was Shull who determined the declared value of the goods he was shipping. Accordingly, we conclude that UPS complied with all the requirements necessary to limit liability under the Carmack Amendment.

### STATE AND FEDERAL PREEMPTION

Because UPS is in compliance with the Carmack Amendment, we next consider whether all of Shull's claims are preempted. In Shull's original petition, he asserts causes of action for negligence, violation of the Deceptive Trade Practices Act, and breach of contract and good faith. He seeks actual damages, exemplary damages, and attorney's fees.

While applicable case law on the Carmack Amendment within the Texas courts is limited, the Fifth Circuit has been clear in its position that the Carmack Amendment preempts all of Shull's claims. In *Moffit v. Bekins Van Lines Co.,* a carrier failed to ship household goods on time to the shipper. 6 F.3d 305, 306 (5th Cir. 1993). The Fifth Circuit held that all of the shipper's claims against the carrier were barred except for the actual loss or injury to the property. *Id.* at 307. The barred claims included (1) the tort of outrage; (2) intentional and negligent infliction of emotional distress; (3) breach of contract; (4) breach of implied and express warranties; (5) violation of the Texas Deceptive Trade Practices Act; (6) misrepresentation and fraud; and (7) negligence and gross negligence. *Id.* at 306. *See also Accura Systems, Inc. v. Watkins Motor Lines, Inc.,* 98 F.3d 874, 876 (5th Cir. 1996) (noting that attorney's fees were preempted by the Carmack Amendment); *Hughes Aircraft Co.,* 970 F.2d 609 (9th Cir.1992) (holding that claims of negligence were preempted).

Shull relies on *Brown v. American Transfer & Storage* for the position that his causes of action under the DTPA are

viable. *Brown* provides a very limited exception to the Carmack preemption. *See Brown v. American Transfer & Storage,* 601 S.W.2d 931, 938 (Tex.1980). In that case, the Texas Supreme Court held that the Carmack Amendment did not preempt a DTPA cause of action when the DTPA was predicated upon pre-contractual representations. *Id.*

▮ Shull's claims in the present case are not based on pre-contractual dealings. Accordingly, his causes of action for negligence, violation of the DTPA, breach of contract and good faith, are all barred, and he is prevented from recovering attorney's fees or punitive damages. The Carmack Amendment limits liability to the declared value of the shipped goods, in this case, no more than $2000. *See Air Products & Chemicals, Inc. v. Illinois Central Gulf Railroad Co.,* 721 F.2d 483, 485 (5th Cir. 1983). However, Shull has also failed to present evidence supporting his claim for actual damages in response to UPS's "no-evidence" motion for summary judgment. *See* Tex.R.Civ.P. 166a(i) (allowing for summary judgment on ground that there is no evidence on one or more essential elements of a claim on which an adverse party would have the burden of proof at trial). As a result, the trial court did not err in barring Shull's claim for actual damages as well. Accordingly, we overrule Shull's first six points of error.

### New Trial

▮ In his seventh point of error, Shull has combined numerous complaints regarding his argument that the trial court abused its discretion by granting a new trial which was based on misrepresentation and collusion. A point of error addressing more than one specific ground of error is multifarious. *Bell v. Texas Dep't of Criminal Justice–Institutional Div.,* 962 S.W.2d 156, 157 n. 1 (Tex.App.—Houston [14th Dist.] 1998, no pet.); *City of San Antonio v. Rodriguez,* 856 S.W.2d 552, 555 n. 2 (Tex.App.—San Antonio 1993, writ denied). If a court concludes that a point of error is multifarious, it may refuse to review it or it may consider the point of error if it can determine, with reasonable certainty, the error about which complaint is made. *Bell,* 962 S.W.2d at 157 n. 1. We are unable to discern all of Shull's complaints within this seventh point of error, but in the interest of justice will address those errors which we can reasonably construe. *See id.*

### Grant of New Trial

Within this point of error, Shull argues that the trial court improperly granted UPS's motion for new trial. Shull argues that the grant of the new trial was based solely on UPS's assertions that it was not given notice of the trial setting. He contends that UPS did have notice.

▮ We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Hanners v. State Bar of Texas,* 860 S.W.2d 903, 908 (Tex.App.—Dallas 1993, writ dism'd). A motion for new trial may be supported by affidavits attached to the motion and by other evidence. *McClure v. Landis,* 959 S.W.2d 679, 681 (Tex.App.—Austin 1997, pet. denied). "The trial court serves as fact finder at a hearing on a motion for a new trial and, accordingly, is the sole judge of the witnesses' credibility." *Hanners,* 860 S.W.2d at 908; *Harmon Truck Lines, Inc. v. Steele,* 836 S.W.2d 262, 265 (Tex.App.—Texarkana 1992, writ dism'd).

UPS presented an affidavit indicating that it did not have notice of the hearing and was not made aware of the judgment until Shull tried to execute on the judgment against UPS. Shull responded to this motion by providing an affidavit arguing that UPS had received notice. The trial court, acting a factfinder, judged the credibility of the witnesses and information provided and determined that the default judgment be set aside. We cannot say that the trial court abused its discretion in doing so.

*Jurisdiction*

 Shull also argues that the trial court did not have jurisdiction to set aside the default judgment as the order was time barred. The default judgment was entered on August 22, 1995, and UPS did not file a motion for new trial until October 26, 1995, more than 30 days after the judgment was signed. A trial court's plenary power will expire thirty days after it has rendered a final judgment absent any post-judgment motions. "After a trial court's plenary jurisdiction has expired, it cannot set aside a judgment unless it lacked subject matter jurisdiction to render judgment in the first place." *Womack–Humphreys Architects, Inc. v. Barrasso*, 886 S.W.2d 809, 812–13 (Tex.App.— Dallas 1994, writ denied). However, Rule 306a will extend the time a party has to file a motion for new trial if the party did not receive notice of the judgment or order. TEX.R.CIV.P. 306a. In such a situation, the thirty day timetable does not begin to run until a party has received such notice. *Id.* (noting that in no event shall such period begin more than ninety days after the original judgment or other appealable order was signed).

 In this case, UPS did not receive notice of the default judgment until October 25 when counsel was informed by his client that a sheriff's deputy was on UPS premises trying to enforce a writ of execution obtained in connection with a final judgment in this case. UPS filed a motion for new trial the following day. Because UPS received notice more than 20 days, but less than 90 days, after the original judgment was signed, UPS's motion for new trial was filed within the appropriate time period. As a result, the trial court's plenary power remained intact and the

trial court had jurisdiction to grant the new trial.[1]

*Trial Court Bias and Attorney Misconduct*

Most of Shull's complaints within this point of error involve his assertions that the trial court was colluding with defense counsel or was somehow biased against Shull, and as a result, conducted impartial proceedings. Shull relies on Texas Rule of Civil Procedure 18b(2), which provides that a judge shall recuse himself in any proceeding in which: "(a) his impartiality might be reasonably questioned; (b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." TEX. R.CIV.P. 18b(2)(a–b). Reviewing the record and the briefs, we can find nothing that substantiates these assertions. Shull's seventh point of error is overruled.

PRO SE LITIGANTS AND TRIAL SANCTIONS

 In his final points of error, Shull argues that a pro se litigant is not required to uphold the same standard of conduct as an attorney. He complains that the sanctions imposed against him were excessive and without merit. He specifically complains that when Judge Crouch imposed sanctions against him, she noted that had he been an attorney, his sanctions would have been much more severe.

 Even though it appears from the record that Judge Crouch was lenient on Shull and did not impose the same sanctions on Shull that would have been imposed on an attorney, we address this issue. "A pro se litigant is held to the same standards as licensed attorneys and must

---

1. Shull also contends that the trial court erroneously granted a new trial because UPS did not present a meritorious defense. However, when a party has no actual or constructive notice of a trial setting, a party is not required to show that it had a meritorious defense as a condition to granting his motion for new trial. *See Lopez v. Lopez*, 757 S.W.2d 721, 723 (Tex.

1988). The *Lopez* court noted that "such a requirement, in the absence of notice, violates due process rights under the Fourteenth Amendment to the federal constitution." *See id.* (citing *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988)).

comply with applicable laws and rules of procedure." *Holt v. F.F. Enterprises,* 990 S.W.2d 756, 759 (Tex.App.—Amarillo 1998, pet. denied); *Greenstreet v. Heiskell,* 940 S.W.2d 831, 834 (Tex.App.—Amarillo 1997, n.w.h.). While it is true, as Shull notes, that pro se pleadings and briefs are to be liberally construed, this does not mean that a pro se litigant is not required to comply with the law and rules of procedure. To do so would be to give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Holt,* 990 S.W.2d at 759; *Greenstreet,* 940 S.W.2d at 835.

The record reflects that Judge Crouch imposed an $1800 sanction on Shull because he failed to give proper notice to UPS with regards to the trial setting and the default judgment. This amount reflected the attorney fees UPS expended to contest the default judgment and to prevent its execution. Reviewing the record, we fail to see how Shull was held to an unreasonable or improper standard of conduct or how the sanction imposed was excessive or without merit. Points of error numbers eight and nine are overruled.

The judgment of the trial court is affirmed.