

# IN THE
# TENTH COURT OF APPEALS

### No. 10-08-00388-CV

**TEXAS TAPE & LABEL CO.,**

                                              **Appellant**

 **v.**

**CENTRAL FREIGHT LINES, INC.,**

                                              **Appellee**

---

**From the 414th District Court
McLennan County, Texas
Trial Court No. 2006-3594-5**

---

## MEMORANDUM OPINION

---

Central Freight Lines, Inc. damaged, and subsequently lost, a package shipped by Texas Tape & Label Co. Texas Tape filed a claim to recover $24,930 in damages. Claiming that liability was limited to $25 per pound, Central tendered the sum of $3,750 for the loss of the 150-pound package. Texas Tape sued Central to recover the remaining $21,180. After a bench trial, the trial court ruled in favor of Central. In one issue, Texas Tape contends that the trial court erred by finding that Central's liability is limited to $25 per pound. We affirm.

## ANALYSIS

The Carmack Amendment "subjects a motor carrier transporting cargo in interstate commerce to absolute liability for 'actual loss or injury to property.'" *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 611 (9th Cir. 1992); *see* 49 U.S.C.S. § 14706 (LexisNexis 2004). To limit its liability under the Carmack Amendment, a carrier must: (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to his choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment. *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987).

Texas Tape contends that Central fails this test because it neither obtained Texas Tape's agreement as to its choice of liability nor gave Texas Tape a reasonable opportunity to choose between different levels of liability.

A reasonable opportunity to choose arises where "the shipper had both reasonable notice of the liability limitation and the opportunity to obtain information necessary to making a deliberate and well-informed choice." *Hughes Aircraft*, 970 F.2d at 612. "The agreement must evidence an 'absolute, deliberate and well-informed choice by the shipper.'" *Id*. A bill of lading is the "form most frequently used for such agreements." *Rohner Gehrig Co. v. Tri-State Motor Transit*, 950 F.2d 1079, 1082 (5th Cir. 1992). "The choice of liability is inextricably intertwined with a reasonable opportunity to choose." *Id*. at 1083.

Whether the bill of lading contains a declared value box is tantamount to whether the shipper had a reasonable opportunity to choose:

> If the shipper fails to fill in the blanks on the bill of lading, there is no "value established by written or electronic declaration of the shipper." Because the shipper is charged with notice of the carrier's tariff, a provision in a tariff which limits liability to a certain amount absent a declaration of value in the bill of lading constitutes a "written agreement between the carrier and shipper," limiting the carrier's liability to the value provided in the tariff. In that situation, the declared value box provides the reasonable opportunity to choose a higher level of liability, and the shipper's expectation that the carrier would be fully liable for any potential loss despite a failure to declare the actual value of the shipment is no more than a unilateral mistake.

> On the other hand, where the bill of lading or other relevant document does not contain a declared value box, an attempted liability limitation contained in the carrier's tariff is not effective because the carrier has not given the shipper a reasonable opportunity to choose a higher level of liability. In those cases there is no unilateral mistake on the part of the shipper; instead, there is the absence of a reasonable opportunity for the shipper to choose different levels of coverage.

*Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 842 (11th Cir. 2003) (internal citations omitted).

Central's tariff limits liability to $25 per pound absent "an agreed upon excess valuation." The bill of lading contains a declared value box:

> Where the rate is dependent on value, shippers are required to state specifically in writing the agreed or declared value of the property. The agreed or declared value of the property is hereby specifically stated by the shipper to be not exceeding:
> $ _____ per pound.

The bill of lading further states: (1) "RECEIVED, subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading;" (2) "Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing

classifications and the said terms and conditions are hereby agreed to be (sic) the shipper and accepted for himself and his assigns;" and (3) "Freight received under this bill of lading will be transported pursuant to Central's applicable tariffs on file with the applicable state or federal regulatory agencies or on file at the carrier's principal place of business, except where otherwise provided in any valid and effective written contract signed by Central and its shipper."

Texas Tape did not declare a value on the bill of lading. Thus, Central argues that it satisfies the *Hughes* test and liability is limited to $25 per pound pursuant to its tariff. The trial court agreed with this position.[1] Texas Tape disagrees for two reasons.

First, Texas Tape contends that any reasonable opportunity to choose was "nullified" by Central's reliance on an alleged pricing agreement. Central employee James Grossman testified that Central handled Texas Tape's claim under the assumption that an existing pricing agreement limited liability to $25 per pound. Central abandoned this position when it discovered that Texas Tape had not signed the agreement. Grossman testified that if a pricing agreement were in place, the $25 limit would be the only option, despite a declared value on the bill of lading. Thus, Texas Tape argues that the $25 per pound limit would have been enforced, regardless of whether the bill of lading contained a declared value.

---

[1] Texas Tape takes issue with the following findings of fact: (1) the bill of lading "contains a clearly marked section for a shipper to insert a declared value," but Texas Tape did not declare a value; and (2) Central's tariff "limits carrier liability in the event of loss or damage on shipments to a maximum value not exceeding $25.00 per pound" and the tariff was made available to customers. Thus, it challenges the trial court's conclusion of law that "The Bill of Lading and Tariff 100 together demonstrate that the maximum Plaintiff may recover is $25 per pound, or $3,750.00."

However, no such pricing agreement was in force in this case.[2]  Additionally, "[t]he valuation the shipper *declares* determines the legal rate where there are *two* rates based upon valuation."  *Kansas City S. R. Co. v. Carl*, 227 U.S. 639, 652, 33 S. Ct. 391, 395, 57 L. Ed. 683 (1913) (emphasis added).  In *Shull v. UPS*, 4 S.W.3d 46 (Tex. App.—San Antonio 1999, pet. denied), Shull argued that he was "not given a reasonable opportunity to choose between two or more levels of liability" because "UPS placed a value cap on computer equipment."  *Shull*, 4 S.W.3d at 49.  The Court disagreed because "Shull was given the opportunity to declare the value of his computer at whatever value he assessed."  *Id*. at 50.  "Shull was given a reasonable opportunity to choose between levels of liability and [] UPS obtained Shull's agreement as to his choice of carrier liability since it was Shull who determined the declared value of the goods he was shipping."  *Id*.

Texas Tape had the opportunity to declare a value on the bill of lading.  *See Shull*, 4 S.W.3d at 50.  A declared value would have controlled.  *See Carl*, 227 U.S. at 652, 33 S. Ct. at 395.  Central's mere belief in the existence of a pricing agreement, which turned out to be unenforceable, did not nullify Texas Tape's reasonable opportunity to choose.

Second, Texas Tape argues that any reasonable opportunity to choose was "destroyed" by Central's representations made at the time it received the package for shipment.  Trey Metz, an owner of Texas Tape, testified that he could not weigh the

---

[2]     Grossman also testified that even shippers bound by a pricing agreement may declare a higher value, but will be charged a fee for doing so.  Central driver William Walton testified that, in a situation involving fragile freight, he would probably advise the customer to declare a value and if the value were too high, he would call in to ensure that he could accept the package for shipping.

package because of its awkward shape. At the time of pick up, Metz communicated this problem to Central driver William Walton. Walton replied, "Don't worry about it. We'll take care of ya." At least twice more, Metz asked whether he needed to fill in anything else on the bill of lading. Walton replied, "No, just sign at the bottom and we'll take care of ya." In light of this testimony, Texas Tape maintains that Metz was "essentially told not to fill in the '$___ per pound' blank on the Bill of Lading."

However, parol evidence cannot be used to contradict the tariff or bill of lading:

The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied, must be conclusive in an action to recover for loss or damage a greater sum.

…

To permit such a declared valuation to be overthrown by evidence aliunde the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies.

*Carl*, 227 U.S. at 652, 33 S. Ct. at 395; *see Montalvo v. Bekins Moving Solutions, Inc.*, 613 F. Supp. 2d 892, 897 (S.D. Tex. 2009) ("As a general rule, a shipper is conclusively bound by tariff rules of a carrier and parol evidence cannot be received to vary the terms thereof."). We reject Texas Tape's argument.[3] *See Atwood v. U W Freight Line, Inc.*, 127 F.

---

[3] Even assuming that parol evidence is admissible, Walton testified that he could "care less" whether the box was completed, but that he would never tell a customer, including Metz, not to declare a value. If a customer cannot weigh the package, Walton testified that Central weighs the package and the customer accepts the weight. The trial court could have concluded that Walton did not tell Texas Tape not to declare a value on the bill of lading. *See LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex. App.—Dallas 2004, no pet.) ("In a bench trial, it is for the court, as trier of fact, to judge the witnesses, to assign the weight to be given their testimony, and to resolve any conflicts or inconsistencies in the testimony.")

Supp. 2d 1155, 1162 (D. Idaho 1999) (Rejecting plaintiff's attempt to introduce evidence of "Mrs. Atwood's conversation with the U W Freight driver and Mr. Atwood's testimony as to his understanding as to the function of a bill of lading;" "what the Plaintiff seeks to do is create an issue of fact by using parole (sic) evidence, i.e. what the driver may have told Mrs. Atwood, to alter the express terms of the contract.").

In summary, Central's tariff limited liability to $25 per pound absent "an agreed upon excess valuation." The bill of lading contains a declared value box where Texas Tape could state an "excess valuation." Despite the opportunity to declare a value, Texas Tape left the box blank and signed the bill of lading. We, therefore, conclude that Texas Tape had a reasonable opportunity to choose and Central obtained Texas Tape's agreement as to its choice of liability. Under these circumstances, the trial court properly found that Central's liability is limited to $25 per pound. *See Sassy Doll*, 331 F.3d at 842; *see also Hollingsworth & Vose Co. v. A P*, 158 F.3d 617, 619 (1st Cir. 1998); *Atwood*, 127 F. Supp. 2d at 1161-62. We overrule Texas Tape's sole issue and, having addressed all arguments preserved for appeal, we affirm the trial court's judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
    Justice Reyna, and
    Judge Woodward[4]
Affirmed
Opinion delivered and filed December 16, 2009
[CV06]

---

[4] The Honorable G. Benton Woodward, Judge of the 119th District Court of Tom Green County, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (Vernon 2005).