# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00083-CV

**Donna B. Ware, Appellant**

**v.**

**The Estate of Johnnie S. Simpson, through its Independent Executor,
Krystene Wormley Woodard, Henry Evans, and Lois Evans, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-GN-07-002661, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Donna B. Ware, appearing pro se, appeals the trial court's judgment declaring that the Estate of Johnnie S. Simpson is the owner of certain real property located at 4600 Wally Avenue in Austin, Texas (the Property), that Ware has no ownership interest in or rights to the Property, and that the Estate has title and rights to possession of the Property superior to Ware's. The trial court also rendered judgment that Ware take nothing on her claims for breach of contract, tortious interference with an existing contract, and for specific performance. In seven issues, Ware contends that the trial court erred in concluding that there was no valid conveyance of the Property from the Estate to Ware and, in the event Ware and the Estate had entered into a valid contract for deed, that Ware failed to timely make the payments contemplated by that agreement. We will affirm.

# BACKGROUND[1]

In November 2004, Ware and Simpson executed a one-year residential lease of the Property to Ware. Ware agreed to pay rent in the amount of $650 per month. According to Ware, toward the end of the lease period she approached Simpson about renewing the lease. Simpson, who was at that time 95 years old, lived in Giddings and was cared for by her brother and a close friend. Ware testified at trial that she visited Simpson in Giddings several times, that the two became friends, and that at one point Simpson asked Ware if she wanted to buy the Property. Ware claims that she and Simpson agreed that Ware could buy the Property for $40,000.[2] Simpson's brother, who also held Simpson's power-of-attorney, was opposed to any sale of the property "on time," insisting that if Ware wanted to buy the Property she would have to pay the full purchase price at closing. Ware was also informed that Simpson's deceased husband's daughter had made a claim to the Property, which led Ware to conclude that it would be necessary for a title company to conduct what she called a "lien discovery" in order to ascertain whether there were any liens on the Property. At a meeting in November 2005, Simpson's brother told Ware that he wanted to "table" any discussion of a sale until Simpson's attorney returned to Giddings and they could discuss the matter further. Simpson's brother also reiterated his opposition to any type of owner-financing, insisting that the full purchase price must be paid at closing. Ware told Simpson's brother that it would not be possible

---

[1] The background information is derived from the exhibits and evidence presented to the trial court during a three-day bench trial.

[2] Although the Travis County appraisal value for the Property was $168,382, Ware testified that Simpson agreed to sell it to her for the land value, $40,000, because the house was in such poor condition.

2

for her to obtain a loan and the only way she could buy the house was by making monthly payments to Simpson.

Thereafter, according to Ware, she made several attempts to meet with Simpson and a notary public to notarize documents Ware prepared to memorialize what she represented to be her and Simpson's agreement regarding the sale of the Property. Simpson's brother, however, continued to oppose the sale and "ran off" the notary. On December 15, 2005, Ware met with Simpson alone, and Simpson signed the document on which Ware bases her claim of ownership of the Property. That document provides, in its entirety, the following:

December 15, 2005

Donna B. Ware made and offer to me in October, 2005 of $40,000, for my property described as, Cedar Valley Subdivision, Block 11, Lot 3, 4600 Wally Avenue, Austin, Texas 78721.

I, Johnnye S. Simpson, accepted the offer of 40,000. I am selling the property to her as is for 40,000.

I am financing the note myself and I am not charging her interest. I am securing the note with the property and the house (everything inside and out). I do not require that she give me earnest money, since she has been my tenant at 4600 Wally Avenue, since November 4, 2004, and she has continued to live at the property when her lease expired on November 5, 2005.

The payments are to be $500 a month for 80 months (6 years, and 8 months). She has my permission to pay more if she can, in an attempt to pay the note off sooner, but I do not require that she pay more than the agreed amount. I am totally aware that the Austin Travis County Appraisal District report total value for the land is $168,382.00. It is my decision to sell the property to Donna B. Ware without regard to the appraised value but with regard to the, many structural repairs needed.

3

Donna B. Ware made 2 payments of $500, in November 2005 and another December $500. Donna B. Ware has acquired Alamo, title company in Austin Texas, to begin a Lien Discovery, witness of our contract, and closing.


_____/s/_____                          _____/s/_____
Johnnye S. Simpson                                      Donna B. Ware


Ware testified at trial that she believed that after this document was executed there were additional things that needed to be done to complete the transaction, including that "we were going to finish the transaction through the title company." Ware testified as follows:

| | |
|---|---|
| Ware: | What [the words used in the December 15, 2005 document] meant and I understood them to be was that we really needed to have some entity that would protect both her interest and mine that would be proof that we were really in a contract with one another. And she had told me—I never bought anything. She said going to a title company [] its going to be the best thing to do. |
| The Court: | So did you think that this was just the first step—this December 15th document was just the first step in what was going to be something else to come that was going to complete the transaction? |
| Ware: | Yes. |

. . . .

| | |
|---|---|
| The Court: | So you thought when you signed this 2005 document that this was going to be the start of the transaction? |
| Ware: | Yes. |
| The Court: | And there was going to be something else to complete the transaction? |
| Ware: | Yes. |
| The Court: | And that something else never happened? |

Ware:        Yes.

The Court:      So do you still have an incomplete transaction or not?

Ware:        No, ma'am.

The Court:      Okay. So tell me what makes you believe now, if you do, that this is the whole deal right here.

Ware:        Because that was simultaneously at the same time. That's why she wanted to get it notarized. That's why she kept having me to come back, because this big huge feud started and [her brother] would not allow her to move forward. He would not allow her—she didn't think it was going to go as far as it went.

. . . .

The Court:      You just told me this December 15th document, Plaintiff's Exhibit No. 4, was the first step in a larger transaction.

Ware:        Yes.

The Court:      But then you said you think this is now the entire transaction.

Ware:        It's all I have left. That's the proof, yes.

The Court:      I'm just trying to figure it out.

Ware:        Yes.

The Court:      If you needed more stuff to happen after this December 15th document was signed, and that never happened, what now makes this the whole transaction?

Ware:        Because it's the only proof that I have as to what happened.

After executing the December 15, 2005 document, Ware continued to live at the Property and began making payments of $500 per month to Simpson.

In May 2006, Simpson executed a gift deed conveying the Property to her relatives, Henry and Lois Evans. Lois Evans testified that Simpson told her at that time that "a lady was renting the property."[3] In June 2007, the Evanses' attorney sent Ware a letter informing her that she should send her monthly payments of $500 to Henry and Lois Evans because they now owned the Property. In response, in August 2007 Ware sued Simpson and the Evanses alleging that the December 15, 2005 document was an enforceable contract providing that Ware would purchase the Property and Simpson would transfer the Property to Ware. Ware asserted a cause of action for breach of contract against Simpson and a cause of action for tortious interference with a contract against the Evanses. Although Ware alleged that she made timely payments of $500, there was conflicting evidence at trial about the number of payments that were actually made to Simpson before Simpson executed the gift deed. According to the Evanses, Ware never sent them any payments. Ware testified at trial that she did not make any payments during the fall of 2008 due to the fact that she was sick and had no income. According to the Estate, Ware made no further payments after 2008, but continued to live at the Property.

Simpson died in January 2010. Thereafter, in May 2010 the Evanses sought a temporary injunction seeking an order that Ware make payments into the registry of the court during the pendency of the suit regarding ownership of the Property. The Evanses stated that they sought this relief because they had been paying property taxes and homeowners' insurance on the Property

---

[3] In her deposition, Simpson testified: "But if [Ware] wanted to buy it, buy it. And if she wanted to rent it, be sure to send the rent on time. But she didn't do that either. She's just living there for free." Simpson also testified that she gave the house to the Evanses because Ware was not paying any rent, stating "I'd rather give it to them than to give it to somebody I didn't know. I mean, not give it to them, but for somebody I didn't even know to take it and live there for free, huh-uh."

and were receiving no payments from Ware, either in the form of rent or installment payments pursuant to the December 15, 2005 document. After a hearing, the court ordered Ware to pay $700 per month into the registry of the court to cover property taxes, homeowner's insurance, and some incidental monthly maintenance expenses for the Property. The funds were to remain in the registry of the court until the final determination of who owned the Property and be disbursed appropriately at that time. In May 2012, the Evanses sold the Property back to the Estate for $35,000 and assigned any claims they might have against Ware to the Estate.

After conducting a three-day bench trial in August 2013, the trial court signed an order that the Estate owned the Property and that Ware had no ownership of or rights to it. The court ordered that Ware take nothing by way of her claims against the Estate and the Evanses, denied the Estate's counterclaims against Ware for breach of contract for failing to pay rent and unjust enrichment, and denied the Evanses' counterclaims against Ware for breach of contract, unjust enrichment, and trespass to real property. The trial court also ordered the $10,642.13 remaining in the registry of the court divided equally between Ware and the Estate. After the trial court denied her motion for reconsideration, Ware perfected this appeal.

**DISCUSSION**

In her first issue, Ware challenges the trial court's conclusion that the December 15, 2005 document was insufficient to convey title to the Property to Ware. We consider, then, whether the December 15, 2005 document constitutes a document sufficient to convey an interest in the Property to Ware; i.e., whether it qualifies as a deed. To validly convey an interest in land, a contract for the sale of real estate must satisfy the requirements of both the statute of conveyances and the

7

statute of frauds. *See* Tex. Prop. Code § 5.021 (conveyances); Tex. Bus. & Com. Code § 26.01(a) (statute of frauds); *see also Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A deed must be in writing and must be subscribed or delivered by the conveyor or the conveyor's agent. Tex. Prop. Code § 5.021. There is no longer a requirement that a deed or instrument to effect a conveyance of real property must have all the formal parts of a deed recognized at common law. *See Green v. Canon*, 33 S.W.3d 855, 858 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Rather, if from the instrument as a whole a grantor and grantee can be ascertained, there are operative words or words of grant showing an intention by the grantor that the instrument is intended to convey to the grantee title to sufficiently described real property, and the instrument is signed and acknowledged by the grantor, then the instrument constitutes a deed that accomplishes a legally effective conveyance. *See Gordon*, 352 S.W.3d at 43;*Green*, 33 S.W.3d at 858; *see also Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.*, No. 08-00-00386-CV, 2002 WL 1445334, at *5 (Tex. App.—El Paso July 3, 2002, no pet.).

The construction of an unambiguous deed is a question of law for the court, and the court's primary duty in construing a deed is to ascertain the intent of the parties from all of the language within its four corners. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The court must attempt to harmonize all of the parts, construing the instrument to give effect to all of its provisions. *Id.* at 462. Language in an instrument that contemplates future action is not language indicating an intent that the instrument effectuate a completed transaction in land. *See Gordon*, 352 S.W.3d at 44 (agreement failed to demonstrate present intent of parties to convey title when agreement contained language expressing clear intent that several future actions be taken prior to

8

completing conveyance, including title search); *Green*, 33 S.W.3d at 859 (letter not sufficient to constitute deed when it contains language clearly contemplating future action, including instructions to retain lawyer to "get started as soon as you can").

Here, the December 15, 2005 document contemplates that the parties would need to prepare documentation that would secure payment using the Property as collateral. The document also contemplates that a title search will be conducted (the "Lien Discovery"), and there will be a "witness of [the] contract," and a "closing." This language indicates that the parties intended a number of future actions in order to complete the transaction, including a title search. The December 15, 2005 document fails to satisfy the requirement of the statute of conveyances that there be operative words of grant showing an intention by Simpson to convey title to the Property to Ware by means of that document itself. *See Green*, 33 S.W.3d at 859 (holding that language in instrument that contemplates future action is not language that contemplates completed transaction in land).[4] Accordingly, we hold that the trial court correctly concluded that the December 15, 2005 document does not constitute a valid conveyance of land from Simpson to Ware. We overrule Simpson's first appellate issue.[5]

---

[4] To the extent it could be argued that there is any ambiguity in the document such that extrinsic evidence could be considered, we observe that Ware herself testified to her understanding that future action was contemplated after execution of the December 15, 2005 document and that such future action did not occur. Moreover, Simpson's own actions in continuing to pay property taxes after signing the document and in conveying the Property to the Evanses by gift deed in 2006 indicate that she did not intend for the December 15, 2005 document itself to convey title to the Property to Ware.

[5] Having concluded that the December 15, 2005 document itself did not convey title to Ware for the reason that it contemplated future action, we need not address Ware's second, third, fourth, or fifth appellate issues in which she argues that the December 15, 2005 document is not vague and is supported by adequate consideration, that she and Simpson had a meeting of the minds sufficient

The trial court's order also states that even if the December 15, 2005 document was an enforceable contract, Ware failed to make timely payments in the required amounts. This finding was in apparent response to Ware's argument that the December 15, 2005 document was a "Contract for Deed" and reflects the trial court's finding that Ware did not make all the payments due under that contract. In her sixth appellate issue, Ware contends that the trial court erred in finding, as stated in its order, that "even if the alleged contract could be enforced as a contract, [Ware] breached the alleged contract by failing to make timely payments in the amounts set out in the document." Ware does not contend that she did in fact make the payments, but argues instead that her failure to do so was excused by either Simpson's or the Evanses' failure to perform some unidentified contractual obligation. Ware appears to assert that Simpson repudiated the agreement memorialized by the December 15, 2005 document, and this repudiation excused her own failure to perform her payment obligation such that she could not be found to have "breached" their agreement. Even assuming Ware is correct, however, this does not demonstrate reversible error in the trial court's judgment.

First, the trial court denied all counterclaims against Ware for breach of contract and imposed no liability on her. Second, assuming that the December 15, 2005 document is a contract for deed, the consequence of her failure to make all the payments required to comply with the contract for deed—referred to in the order as Ware's "breach" of the agreement—was that title to

_____

for a valid and enforceable conveyance of real property, and that a complete conveyance of the Property was possible despite the fact that third parties claiming an interest in the Property were not parties to the December 15, 2005 document. *See* Tex. R. App. P. 47.1 (court of appeals must hand down written opinion that is as brief as possible but that addresses every issue raised and necessary to final disposition of appeal).

the property remained in the seller. A contract for deed is an executory contract constituting an agreement by a seller to deliver a deed to property once certain conditions have been met. *See Graves v. Diehl*, 958 S.W.2d 468, 470 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Until the executory contract is fully performed, the owner retains legal title to the property, but holds that title subject to the purchaser's equitable right to complete the contract, i.e., to make payments and receive a deed once payments are completed. *See Gaona v. Gonzalez*, 997 S.W.2d 784, 786-87 (Tex. App.—Austin 1999, no pet.); *Graves*, 958 S.W.2d at 471. The seller is not obligated to deliver legal title to the property until the purchaser pays the purchase price in full. *See Salinas v. Beaudrie*, 960 S.W.2d 314, 319 (Tex. App.—Corpus Christi 1997, no pet.). Under a contract for deed, the purchase price is usually paid in installments over a course of years. *Id.* In the present case, there was undisputed evidence that Ware did not make the payments required by the December 15, 2005 document she contends is a contract for deed. According to that document, Ware was to make eighty monthly payments of $500 to pay the $40,000 purchase price. Assuming her first payment was made in November 2005, Ware was required to pay $500 per month until June 2012. It is undisputed that Ware stopped making payments in the fall of 2008 and made no further payments required by the December 15, 2005 document.[6] Thus, even though Ware was not obligated to make the payments set forth in the contract for deed, Ware's failure to make those payments meant that title to the Property remained with the seller. *See Graves*, 958 S.W.2d at 471 (purchaser's equitable right does not ripen into equitable title to property until he has fully performed under the contract, i.e., paid

---

[6] The payments into the registry of the court were ordered to create a fund to pay property taxes and insurance and cannot fairly be characterized as payments made pursuant to the December 15, 2005 document.

11

the full purchase price). The trial court was therefore correct in its conclusion that the Estate owned the Property. We overrule Ware's sixth appellate issue.[7]

In her seventh issue, Ware argues that the trial court erred in rendering judgment in favor of the Evanses on her tortious interference with contract claim. The briefing under this issue consists entirely of Ware's contention that the gift deed conveying the Property to the Evanses was a "fraudulent document" that the Evanses knowingly filed in the Travis County Real Property Records. Ware does not, however, explain how such action by the Evanses, even if it had occurred, met the elements of a tortious interference with contract claim and she provides no legal support for this assertion. Nor are we able to discern how the alleged conduct could satisfy the elements of a claim for tortious interference with contract. While we liberally construe pro se briefs, we are required to hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185-86 (Tex. 1978). To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999, pet. denied). The law is well established that, to present an issue to this Court, a party's brief shall contain, among other things, a clear and concise argument for the contention made with appropriate citations to legal authorities and to the record. *See* Tex. R. App. P. 38.1(i) (brief must

---

[7] Although not raised as an appellate issue, Ware seems to complain of some inequity in the trial court's concluding that she does not own the property yet failing to "reimburse" her for payments she made into the registry of the court to cover property taxes and insurance during the pendency of the lawsuit. We observe however that, according to her brief, Ware has paid approximately $15,000 into the registry of the court, $5,321.01 of which was returned to her after trial. It also appears from the record that Ware lived at the Property for at least four years without paying any other form of rent, which would mean she paid no more than $200 per month to live at the Property during the pendency of this suit.

12

contain clear and concise argument for contentions made, with appropriate citations to authorities and to record). Bare assertions of error, without argument or authority, waive error. *See Sullivan v. Bickel & Brewer*, 943 S.W.2d 477, 486 (Tex. App.—Dallas 1995, writ denied). By failing to adequately brief her complaint that the trial court erroneously denied her claim for tortious interference with contract, Ware has waived our review of that complaint. Accordingly, we do not address further Ware's seventh appellate issue.

## CONCLUSION

The trial court properly concluded that the Estate had title to the Property and did not err in rendering judgment that the Estate owned the Property and that Ware had no ownership interest therein. Consequently, we affirm the trial court's judgment.

_____

Scott K. Field, Justice

Before Justices Puryear, Pemberton, and Field

Affirmed

Filed: December 22, 2015