**AFFIRMED; Opinion Filed October 28, 2020**



In The
## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01005-CV

### IN THE INTEREST OF E.W.M., A CHILD

**On Appeal from the 219th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 219-53699-2018**

## MEMORANDUM OPINION
Before Justices Myers, Nowell, and Evans
Opinion by Justice Myers

This is an appeal from a divorce decree following the parties' signing a mediated settlement agreement (MSA). Father brings three issues on appeal contending the trial court erred by adding additional terms to the child-care parental right-of-first-refusal provisions in the MSA and by awarding Mother her attorney's fees. We affirm the trial court's judgment.

## BACKGROUND

Mother and Father were married and had one child, E.W.M. Subsequently, Father filed a petition and Mother filed a counterpetition for divorce. In their live pleadings, they each requested that they be named joint managing conservators of

the child. The trial court ordered the parties to mediate, and after two lengthy mediation sessions, they signed a mediated settlement agreement regarding division of property and conservatorship and support of the child. The MSA complied with Family Code sections 6.602(b) and 153.0071(d). *See* TEX. FAM. CODE ANN. §§ 6.602(b), 153.0071(d).[1] The MSA included this term: "Right of first refusal if the parent in possession is unable to supervise the child overnight."[2]

Mother and Father presented their own versions of the divorce decree to the trial court. Concerning the right of first refusal, the two versions expanded on the language in the MSA, adding a definition and other language that was not in the MSA. Although Mother's and Father's versions were not identical, the two versions were substantially similar to a certain point.[3] Mother's version then added exceptions to the provision:

---

[1] These provisions state,

> A mediated settlement agreement is binding on the parties if the agreement:
>
> (1) provides in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>
> (2) is signed by each party to the agreement; and
>
> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

FAM. §§ 6.602(b); 153.0071(d). In this case, the MSA stated "this agreement is not subject to revocation" in boldfaced, underlined, capital letters, and it was signed by Mother and Father and by their attorneys.

[2] The "right of first refusal" in this case means an agreement that if the parent with current possession of the child will not be personally supervising the child during an overnight period, the parent must offer the parent not in possession the opportunity to supervise the child during that period.

[3] Mother's version described the right as follows:

> Right of First Refusal – In the event a Party in possession of the child is unable to supervise the child for an overnight period (with "overnight" being defined as beginning

The Right of First Refusal does not apply to age-appropriate sleep-overs with friends, sleep overs with family members of [Father], sleep overs with family members of [Mother], or school or church activities.

Father's version of the decree did not contain these exceptions, and he objected to their inclusion in the decree.

The MSA provided that if the parties disagreed about the interpretation of the MSA's terms, they would return to the mediator who would have "the exclusive authority to add any and all language he deems appropriate or necessary for clarification and/or to effectuate the intent and agreement with the parties." The MSA also stated that if a dispute arose regarding the interpretation of the MSA and its incorporation into the judgment, the dispute would be resolved through binding arbitration with the mediator, who would have "the exclusive authority to

---

at 10:00 p.m. and ending at 7:00 a.m.) during that Party's period of possession of the child for any reason, such party shall notify the other Party as soon as possible after the Party in possession discovers he/she will be unable to supervise the child overnight, and the Party not then entitled to present possession of the child shall have the first option to take possession of the child for such period of time as the Party entitled to present possession of the child will be unable to supervise the child overnight. This Right of First Refusal does not apply to age-appropriate sleep-overs with friends, sleep overs with family members of [Father], sleep overs with family members of [Mother], or school or church activities.

Father's version of the decree described the right of first refusal as follows:

Right of First Refusal – In the event a Party will not be present personally with the child for an overnight period (with "overnight period" being defined as beginning at 10:00 p.m. and ending at 7:00 a.m.) during that party's period of possession of the child for any reason, such Party shall notify the other Party as soon as possible after the Party in possession discovers he/she will not be present personally with the child for such period of more than one overnight, and the Party not then entitled to present possession of the child shall have the first option to take possession of the child for such period of time as the Party entitled to present possession of the child will not be personally present with the child.

–3–

add any and all language, including but not limited to language for clarification, enforceability, indemnity and/or to effectuate the intent and agreement of the parties, without reservation."

At the hearing on the parties' motions concerning the decree, the parties described to the trial court their disagreement about the right of first refusal and other parts of the decree. Father told the trial court about his concerns with Mother's friend monitoring a sleepover of another child.[4] Mother told the trial court that the exceptions were the common practice. After reaching an agreement on the other issues, the parties told the trial court they could not reach an agreement on the language in the decree concerning the right of first refusal. Father's attorney told the court that the parties were waiving "the right to go to arbitration and let you decide that so we can get this done." Father and Mother told the court under oath that they were waiving the right to arbitration and asking the court to decide the issue. The court then announced that the exceptions to the right of first refusal would be included in the decree.

---

[4] Father told the trial court:

> There's been past experiences with my stepchildren where she left them at—a person—a friend named Dakota, and I said I really don't think that's a good idea. And then found out that they would sneak in girls into their room at night, and I think they were sneaking out as well . . . . And they want to spend as much time with my son as they can. If—if she doesn't want to be with him, I want to be with him.

The trial court also awarded Mother $500 for attorney's fees due to the additional time Mother's attorney spent because of Father's delays after the mediation.

## PRO SE PARTIES

Father was represented by counsel in the trial court, but he is pro se before this Court. We liberally construe pro se briefs. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). However, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978); *Washington*, 362 S.W.3d at 854. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.–San Antonio 1999, pet. denied).

## RIGHT OF FIRST REFUSAL

In the first and second issues, Father contends the trial court erred by adding exceptions to the right of first refusal provision in the MSA because the parties did not agree to the exceptions, and because the MSA did not permit an arbitrator to add to or delete from the MSA's substantive provisions.

Father contends the right of first refusal is a "core parental right." Father cites *Troxel v. Granville*, 530 U.S. 57 (2000), in support of this assertion. In *Troxel*, the children were being raised solely by the mother after the father had

died. *Id.* at 60. Before his death, the father regularly brought the children to visit his parents on weekends. *Id.* After his death, the mother told the father's parents that she wished to limit the children's visits to one short visit per month. *Id.* at 61. The grandparents brought suit under a state statute that permitted a court to grant visitation to any person whenever visitation may serve the best interest of the child. *Id.* at 60, 61. The trial court ordered the mother to provide greater visitation to the grandparents than the mother wanted. *Id.* at 61. The Supreme Court identified the interest of parents in the care, custody, and control of their children as "perhaps the oldest of the fundamental liberty interests recognized by this Court." *Id.* at 65. The Court determined that the state statute was unconstitutional because it did not require the courts to accord special weight to the parent's determination. *Id.* at 70–73 ("[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made."). *Troxel* does not concern the right of first refusal. Nor does it concern the rights of one parent during periods when the other parent has possession of the child.

Father also cites *In re Lee*, 411 S.W.3d 445 (Tex. 2013) (orig. proceeding). In that case, the trial court refused to enter judgment on an MSA because the court considered the agreement not to be in the best interest of the child. *Id.* at 448. The supreme court concluded that Family Code section 153.0071 did not permit the trial court to inquire into whether the agreement was in the child's best interest,

and that allowing trial courts to do so is "in contravention of the unambiguous statutory mandate in section 153.0071 [that] has severe consequences that will inevitably harm children." *Id.* at 455. The supreme court concluded the trial court abused its discretion by denying the motion to enter judgment on the MSA. *Id.* at 458–59. The case did not concern the right of first refusal, nor does this case involve a trial court's refusal to enter judgment on an MSA.

Father presents no other authority in support of his assertion that the right of first refusal is a "core parental right." Even if the right to control a child's associations is a parental right with which the State cannot interfere, Father cites no authority for the proposition that a parent who is not in a period of possession of the child has the right to overturn the associational determinations of the parent with possession. We conclude Father has not shown that he, as a non-custodial parent, has a right of first refusal that is a "core parental right." Nor has he shown that he has a constitutional right that is being infringed by the circumstances of this case that is superior to the custodial parent's rights.[5]

To the extent Father argues the trial court lacked authority to add the exceptions to the right of first refusal because the MSA required disputes to be

---

[5] We do not imply that the trial court could not give one parent the right to approve or overturn the associational decisions of the other parent in the appropriate case. We hold only that there is no constitutional right, or as Father phrases it, "core parental right," for a parent not in a period of possession of the child to approve or disapprove the associational determinations of the other parent during that parent's period of possession.

arbitrated, Mother and Father told the trial court multiple times, including under oath, that the trial court could make the determination about whether to include the exceptions in the decree instead of sending the case back to the mediator for arbitration of that issue. "Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 676 (Tex. 2020) (internal quotation marks omitted). The trial court and the attorneys informed the parties of their right to have the dispute concerning the right of first refusal be determined in arbitration before the mediator. The parties, including Father, told the trial court they wanted the court to determine the dispute to hasten the resolution of the case. Father expressly waived any right to have the issue determined by arbitration.

Father also contends that "[t]he arbitrator is not authorized to add to a substantive provision." We presume Father means that the trial court in the position of the arbitrator (based on the parties' agreement to have the trial court make the determinations about the right of first refusal that otherwise would have been arbitrated) did not have authority "to add to a substantive provision." The MSA stated, "The arbitrator will not be authorized to add to or delete from the substantive provisions of this Mediated Settlement Agreement."

The MSA stated, "Right of first refusal if the parent in possession is unable to supervise the child overnight." Thus, the MSA provided only that the decree

would have a right of first refusal for overnight supervision of the child. It did not specify the terms of that provision. In the MSA, the parties stipulated "that there may need to be interpretation of the document and an extension of the language in this document, and that all the language to be used in the order(s) may not be contained in this mediated settlement agreement." The MSA provided that if the parties could not agree to the language to be used in the decree, the dispute would be submitted to arbitration, and that the arbitrator would have "the exclusive authority to add any and all language including but not limited to language . . . to effectuate the intent and agreement of the parties." That was the situation with the right of first refusal. Both parties recognized that the MSA's provision concerning the right of first refusal was insufficient for the decree, and both their versions of the decree added language from that in the MSA. Father argues on appeal that the parties did not intend to add the sleep-over exceptions to the right of first refusal because the parties mediated extensively for two days and the MSA does not mention the exceptions.

The trial court could conclude that that inclusion of the exceptions did not add any "substantive provisions" to the many provisions of the MSA but instead constituted language "to effectuate the intent and agreement of the parties" concerning one of those substantive provisions, the right of first refusal. Under the MSA, the arbitrator, and thus the trial court sitting in place of the arbitrator, had authority to include language "to effectuate the intent and agreement of the

–9–

parties." Therefore, the trial court had the authority to include the exceptions in the right of first refusal provision.

We conclude Father has not shown the trial court erred by including the exceptions in the right of first refusal provision. We overrule Father's first and second issues.

## ATTORNEY'S FEES

In the third issue, Father contends that the attorney's fees award should be reversed if we reverse and remand the inclusion of the exceptions in the right of first refusal. As discussed above, we are affirming the inclusion of the exceptions in the right of first refusal. Therefore, we do not reverse the award of attorney's fees for this reason.

Father also argues the trial court erred by admitting the exhibit consisting of Mother's attorney's billing records. At trial, Father's attorney objected to the billing records:

> Your Honor, this is the first time I've received this; and second, opposing counsel did not file this contract that shows that there is an existing relationship—we don't it's appropriate and timely filed [sic]. To show on these things, there has to be a breakdown.

> The fee should be motion for the motion to enter, not for the work done from mediation on; and the law requires that you have an itemized statement of what bill was related to what we're here for today.

The trial court overruled the objections and stated,

> You [Mother's attorney] have a very detailed breakdown of what your fees were for, they absolutely comply with what is required. And it's

–10–

very clear that these fees were after mediation and that most of them had to do with trying to schedule arbitration . . . .

We review the trial court's admission of evidence for an abuse of discretion. *Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 27 (Tex. 2014). A court abuses its discretion if it acts "without reference to any guiding rules and principles" or if "the act was arbitrary or unreasonable." *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

Father argues on appeal that the trial court erred by admitting the exhibit because it was not timely filed and Father's attorney saw the exhibit for the first time at the hearing. Father cites no trial court order, rule, or other authority that required Mother to file the exhibit ahead of time. Nor does he explain why Mother's failure to file the exhibit before trial made the exhibit inadmissible. We conclude Father has not shown the trial court abused its discretion by overruling this objection.

Father argues the trial court erred by admitting the exhibit because "opposing counsel did not file the attorney contract that establishes that there was an existing relationship between the attorney and client." Father cites no authority showing that such a contract must be filed. At the beginning of the hearing, Mother's attorney told the trial court she was appearing in representation of Mother. Father did not object. The record does not show that Father filed a Rule 12 motion challenging Mother's attorney's authority to act on her behalf. *See* TEX.

–11–

R. Civ. P. 12. We conclude Father has not shown the trial court abused its discretion by overruling this objection.

Father also argues, "the fees should be motion for motion to what was entered and the requirement to have an itemized billing statement." Mother's attorney provided an itemized billing statement, and Father does not explain how it was insufficient. To the extent Father asserts the evidence of attorney's fees should have been limited to those incurred in preparation for and the hearing on the motion to sign the divorce decree, Father cites no authority and provides no explanation for the assertion that the inclusion of other billing entries made the entire exhibit inadmissible. We conclude Father has not shown the trial court abused its discretion by overruling this objection.

Father also asserts that part of Mother's attorney's testimony cannot be considered because she was not sworn. When Mother's attorney finished her direct testimony about attorney's fees, the following occurred:

The Court: [To Father's attorney] Do you have any cross-examination for her on attorney's fees?

[Father's attorney]: Yes.

The Court: I did not swear you in. I'm sorry.

. . . .

Okay. You've got to start over.

(Oath administered to both attorneys by the Court.)

The Court: And same for you?

–12–

[Father's attorney]:  Yes, Your Honor.

The Court:  Okay.  Are you saying that you waive any objection to her not being sworn in to testify?

[Father's attorney]:  Yes, Your Honor, I do.

The Court:  Thank you.

[Father's attorney]:  She's an officer of the Court and I trust her ethics.

Father's attorney expressly waived any error from the trial court's consideration of Mother's attorney's unsworn testimony.  *See Chalker Energy*, 595 S.W.3d at 676.

Moreover, any error is not preserved.  For error to be preserved for appellate review, the record must show a party objected, stating the grounds for the ruling sought, and that the trial court ruled on the objection.  *See* TEX. R. APP. P. 33.1(a).  These requirements apply to unsworn testimony by an attorney.  *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam).  In this case, Father's attorney did not object to opposing counsel's unsworn testimony.  Therefore, appellant's argument on appeal was not preserved for appellate review.

The Family Code provides that "the court may render judgment for reasonable attorney's fees and expenses."  FAM. § 106.002(a).  We review the trial court's decision to award attorney's fees in a suit affecting the parent–child relationship for an abuse of discretion.  *In re B.J.W.*, No. 05-17-00253-CV, 2018 WL 3322882, at *1 (Tex. App.—Dallas July 6, 2018, no pet.) (mem. op.).  Mother requested attorney's fees of $8,214.18, and the trial court awarded fees of $500.

–13–

Father has not shown the award of fees was unreasonable or constituted an abuse of discretion.

We overrule Father's third issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers/

LANA MYERS
JUSTICE

191005F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF E.W.M., A CHILD

No. 05-19-01005-CV

On Appeal from the 219th Judicial District Court, Collin County, Texas Trial Court Cause No. 219-53699-2018.
Opinion delivered by Justice Myers. Justices Nowell and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Sarah Rose Masefield recover her costs of this appeal from appellant Marc Wayne Masefield.

Judgment entered this 28th day of October, 2020.

–15–