**AFFIRMED and Opinion Filed February 22, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00755-CV**

**IN THE ESTATE OF RAFFAELE MARTINI PANDOZY**

**On Appeal from the Probate Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. PR-18-03717-1**

## MEMORANDUM OPINION

Before Justices Schenck, Smith, and Garcia
Opinion by Justice Garcia

This is a probate case in which the court ruled that appellant Sulma Gonzalez lacked standing to participate in the proceeding. In five issues, Gonzalez now argues the trial court erred by: (i) concluding that she was not the decedent's common law spouse or a creditor of the decedent's estate; (ii) affirming the findings made in a previous order declaring heirship; (iii) awarding attorney's fees against her; and (iv) not admitting a document to probate that she claims is decedent's last will. Concluding Gonzalez's arguments are without merit, we affirm the trial court's judgment.

## I. BACKGROUND

Raffaele Martini Pandozy died intestate in 2018. He had three children who survived him: Maximillian Carlo Martini, Christopher O'Bannon Martini, and Michelle Cornelia Marini (collectively, the "Children").[1]

Maximillian filed an application to determine heirship in Collin County, and later, an application for independent administration and letters of administration. The court appointed an ad-litem to represent Pandozy's unknown heirs.

After an evidentiary hearing, the court issued a judgment declaring heirship naming the Children Pandozy's sole heirs. The court also issued an order granting Maximillian letters of independent administration.

Gonzalez filed a motion for new trial and to transfer the case to Dallas County. Gonzalez argued, among other things, that she was Pandozy's common law spouse and venue was not proper in Collin County. The Collin County court set aside its orders and transferred the case to Dallas County.

Maximillian filed a "Motion for Standing Hearing" requesting that the court determine Gozalez's status as an interested person under the Estates Code and award attorney's fees. *See* TEX. EST. CODE ANN. § 22.018. Gonzalez responded and attached her affidavit, the affidavit of Wilfredo Romero, a neighbor, and the affidavit of Victoria Sujansky, a work acquaintance.

---

[1] Because Pandozy's children share a last name, we refer to them individually by first name.

The court conducted an evidentiary hearing to determine standing. Both parties were represented by counsel at that time. Gonzalez and Sujansky testified in Gozalez's case-in-chief, and Gonzalez offered a single exhibit into evidence. That exhibit, a secretary of state filing, showed Pandozy as the new registered agent for "Core Fitness System Inc" with a business address for that agent at 2548 Delmac Drive in Dallas, Texas. Gonzalez claimed that she and Pandozy resided at that address as husband and wife.

When the hearing concluded, Maximillian's counsel moved for a directed verdict, arguing that Gonzalez failed to prove that she was Pandozy's common law spouse and that she otherwise lacked standing. The court granted the motion.

After the motion was granted, Gonzalez filed five additional responses to the standing motion, each of which attached additional documents that were not referenced or introduced at the hearing. Gonzalez also requested findings of fact and conclusions of law, which the trial court denied.

Gonzalez subsequently filed a motion for new trial that Maximillian opposed. Maximillian's counsel also filed supplemental affidavits in support of his attorney's fees request.

The motion for new trial was set for hearing but Gonzalez did not appear. The court later signed an order awarding Maximillian $5,107.49 in attorney's fees. The court also ruled that Gonzalez lacked standing and dismissed her claims with prejudice, reaffirmed the Collin County court's findings that the Children are

–3–

Pandozy's sole heirs, and memorialized its oral pronouncement granting Maximillian's motion for directed verdict. This appeal followed.[2]

## II. ANALYSIS

We note at the outset that Gonzalez is pro se before this Court. We liberally construe pro se pleadings and briefs. *Washington v. Bank of N.Y.*, 362 S.W.3d 853, 854 (Tex. App.—Dallas 2012, no pet.). Nonetheless, we hold pro se litigants to the same standards as licensed attorneys and require them to comply with applicable laws and rules of procedure. *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex.1978); *Washington*, 362 S.W.3d at 854. To do otherwise would give a pro se litigant an unfair advantage over a litigant who is represented by counsel. *Shull v. United Parcel Serv.*, 4 S.W.3d 46, 53 (Tex. App.—San Antonio 1999, pet. denied).

The rules of appellate procedure require that an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h). Similarly, we cannot speculate as to the substance of the specific issues a party claims we must address. *Strange v. Continental Cas. Co.*, 126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied).

With these principles in mind, we have endeavored to identify and address the issues properly before us. To the extent that Gonzalez intended to raise any

---

[2] Two additional appeals arising out of the same underlying proceeding were consolidated with this appeal under this cause number.

–4–

additional issues or arguments, they may be waived for improper briefing. *See* TEX.
R. APP. P. 38.1.

## Standing as an Interested Person under the Estates Code

Gonzalez argues the trial court erred in concluding that she is not an interested person under the Estates Code and therefore lacks standing. Gonzalez insists that she is an interested person because she was Pandozy's common law wife and is a creditor of the estate.[3] These arguments are not persuasive.

Standing "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome." *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). Because standing is a requirement of subject-matter jurisdiction, we review a trial court's standing determination de novo. *Frost Nat'l Bank v. Fernandez,* 315 S.W.3d 494, 502 (Tex. 2010).

The Estates Code defines an interested person "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. EST. CODE ANN. § 22.018(1). In a probate proceeding, the burden is on the person whose standing is challenged to prove that she is an "interested person." *In re Estate of Casares*, 556 S.W.3d 913, 915 (Tex. App.—El

---

[3] For the first time in her reply brief, Gonzalez also argues that she is an interested person "if the after-acquired title doctrine applies." This argument was not raised in the court below. And even if we assume the argument was preserved, it is forfeited for inadequate briefing. *See* TEX. R. APP. P. 38.1.

Paso 2018, no pet.); *In re Estate of Forister*, 421 S.W.3d 175, 177 (Tex. App.—San Antonio 2013, pet. denied).

Here, Maximillian moved for a directed verdict after Gonzalez rested her case. The trial court granted a directed verdict, and Gonzales appeals the granting of a directed verdict, arguing there was "a genuine issue of material fact" as to her status as Pandozy's common law wife and as a creditor of the estate.[4]

But when a party moves for a directed verdict in a bench trial, it is actually requesting that the trial court render judgment because there is no jury to direct. *Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 422 n. 4 (Tex. 1993) (Gonzalez, J., concurring). In such a case, we treat the improperly characterized motion for directed verdict as a motion for judgment. *Joplin v. Borusheski*, 244 S.W.3d 607, 610 (Tex. App.—Dallas 2008, no pet.); *In re A.G.*, 531 S.W.3d 329, 335 n.6 (Tex. App.—Houston [14th Dist.] Sept. 12, 2017, no pet.) (mem. op.). This distinction is significant because it implicates the correct standard of review. *See U.S. Fidelity Guar. Co. v. Coastal Refining & Marketing, Inc.*, 369 S.W.3d 559, 564 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because the motion in this case was brought after Gonzalez rested in a bench trial, we construe Maximillian's motion for a directed verdict as a motion for judgment. *See Joplin*, 244 S.W.3d at 610.

---

[4]She also lists numerous other reasons why the directed verdict was allegedly improper, but none of these reasons are adequately briefed. *See* Tex. R. App. P. 38.1.

The trial court, as the fact finder in a bench trial, may rule on the factual and legal issues at the close of the plaintiff's case. *Id.* By entering judgment at the close of the plaintiff's case in chief, the trial court is presumed to have ruled on both the sufficiency and weight of the evidence. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303–04 (Tex. 1988).

On appeal from the granting of a motion for judgment in a bench trial, the legal and factual sufficiency of the evidence to support the judgment may be challenged as in any other non-jury case. *Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 677 (Tex. App.—Houston [14th Dist.] 2006, no pet.). When we review legal sufficiency, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing a finding for factual sufficiency, we consider all the evidence and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986) (per curiam).

Under this construct, we view Gonzalez's first two issues as a challenge to the legal and factual sufficiency of the evidence to support the judgment and apply the appropriate standards to our review.

## A. Informal Marriage

Gonzalez first challenges the trial court's determination that no informal marriage existed. As the proponent of the marriage, Gonzalez bore the burden to prove by a preponderance of the evidence that she and Pandozy were informally married. *See In re J.G.S.*, No. 05-18-00452-CV, 2019 WL 336543, at *3 (Tex. App.—Dallas Jan. 28, 2019, no pet.) (mem. op.). Specifically, Gonzalez was required to prove: (1) she and Pandozy agreed to be married; (2) after the agreement, they lived together in Texas as spouses; and (3) and there represented to others that they were married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2); *Russell v. Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *In re Estate of Marek*, No. 05-13-01008-CV, 2014 WL 3057479, at *4 (Tex. App.—Dallas July 7, 2014, no pet.) (mem. op.). The existence of a common law marriage is a question of fact to be resolved by the fact finder. *Joplin*, 244 S.W.3d at 611.

To this end, Gonzalez testified that she met Pandozy in around 2003 and they became romantically involved in 2008. At that time, she lived with her mother in a house located at 2548 Delmar Drive and Pandozy had a studio on Al Lipscomb Way. Although Gonzalez claimed that Pandozy moved in with her in 2009, he also maintained his studio on Al Lipscomb. At one point, Gonzalez said that Pandozy lived at the Al Lipscomb address, but she later claimed that he had an art studio rather than a dedicated residence at that address. Gonzalez said that she and Pandozy

discussed marriage in around 2009 in the context of having an "exclusive" relationship.

Gonzalez testified as follows:

Q. So, at any point either before or after 2009, did you discuss getting married with [Pandozy]?

A. Yes ma'am.

Q. Do you remember the discussion?

A. Yes, the discussion essentially was that because we were, became exclusive, you know, and he was, I'm going to say, you know had a lot of personal demons he had dealt with throughout his life.

[brief clarification by Court]

A. So, he wanted with us to be together, but we needed to be exclusive and that included, you know, as far as sex we had to be exclusive and that was part of it and that's the reason we decided to get married . . . .

Later, Gonzalez's counsel asked, "So, you were saying . . . that you were exclusive, and that yes, *you* agreed to be married? (Emphasis added). Gonzalez responded affirmatively.

Gonzalez sold the Delmar property in 2017 and moved to Waco, but Pandozy remained in Dallas. When Gonzalez visited Pandozy in Dallas she would either stay with him at the Al Lipscomb address or would stay with her cousin.

Pandozy was diagnosed with colon cancer and later died in the hospital. Gonzalez visited Pandozy in the hospital but was in Waco when he died.

Gonzalez's discovery responses were admitted into evidence during cross examination. Those responses state that she has no documents evidencing joint safe-

deposit boxes, joint property interests, joint title to any motor vehicles, credit files and credit card receipts, loan applications, leases, memberships, or other contractual obligations in the parties' names. Gonzalez did not refute these responses or attempt to adduce evidence of any of these items at the hearing.

Although Gonzalez claimed she had carried Pandozy on her car insurance, she did not identify when or for how long. And she admitted that she had not submitted any documentary evidence to substantiate this claim.

Gonzalez further admitted that she and Pandozy had never filed a joint tax return and did not maintain a joint bank account. She also acknowledged that Pandozy's businesses would sometimes loan her money for which Pandozy required that she sign promissory notes.

The affidavit of one of Gonzalez's witnesses, Wilfredo Romero, was also admitted into evidence during cross-examination. Romero was a neighbor who lived on Delmar Street. He refers to Pandozy as Gonzalez's husband without explaining the basis for that characterization and then recounts an unidentified time when he visited Gonzalez's home unexpectedly and Pandozy asked "what [he] needed with his wife."

In addition to submitting an affidavit, Sujanksy also testified at trial. She initially said that she knew Gonzalez through work and visited Gonzalez at home a "couple of times." But she later testified that she saw Gonzalez and Pandozy about

every fifteen days or once a month. Sujansky admitted, however, that she had not seen Pandozy since 2015.

Sujansky testified generally that Pandozy was there "when she visited" and Gonzalez introduced him as her husband. She also said she heard Pandozy refer to Gonzalez as his wife but failed to specify when or how often. Instead, Sujanksy conclusively stated that she always believed that Gonzalez and Pandozy were husband and wife.

The evidence attached to Maximillian's motion included a Dallas Police incident report describing a disturbance at the Al Lipscomb property after Pandozy's death. The Children were there looking for Pandozy's will when Gonzalez showed up and claimed that some of her belongings were on the property. When the police arrived, she told the officer that she was a partner in one of Pandozy's businesses. On cross-examination, Gonzalez admitted that she did not tell the officer she was Pandozy's wife.

Maximillian also attached Vincent Walker's affidavit to his motion. Walker stated that he had been acquainted with Pandozy for over thirty years and flew from Miami to Dallas in 2016 to care for Pandozy when he was diagnosed with cancer. He stayed with Pandozy for approximately a month and a half, and Gonzalez did not live there. Walker was with Pandozy every day when he was in the hospital, and said Gonzalez only visited him twice. On one of those occasions, Gonzalez drove

Pandozy to the hospital when his car would not start. She later requested payment for her service.

Walker further stated that Gonzalez never made a social visit to Pandozy's home and did not eat dinner with him. On the few occasions that Gonzalez was present with Pandozy, Walker did not see any indication of romantic or even casual affection.

Walker had long and intimate conversations with Pandozy. Pandozy never demonstrated an intimate relationship with Gonzalez nor did he ever express that he had any relationship with her beyond "casual helper."

Gladys Smith also provided an affidavit. Smith resided in one of the apartments at the Al Lipscomb property from May 2017 until December 2017. Gonzalez did not reside there during that time. Smith saw Gonzalez visit approximately three times to ask Pandozy for money or legal advice or to store things on the premises. According to Smith, this made Pandozy "very upset."

Although Gonzalez alleged that she and Pandozy discussed marriage in around 2009, she offered no evidence that the discussion ever culminated in an agreement to be married. At most, Gonzalez's testimony describes an agreement to get married at some point in the future, not an agreement to be married. This distinction is significant. *See Estate of Summers*, No. 14-13-00816-CV, 2015 WL 124311, at \*4 (Tex. App.—Houston [14th Dist.] Jan. 8, 2015, no pet.) (mem. op.); *Kuester v. Green*, No. 03-13-00704-CV, 2015 WL 4998171, at \*4 (Tex. App.—

–12–

Austin Aug. 20, 2015, no pet.) (mem. op.). The agreement-to-be-married element requires proof of an intent to create an immediate and permanent marital relationship and that the couple did in fact agree to be husband and wife. *Winegardner v. Hughes*, Nos. 07-18-00434-CV, 07-19-00283-CV, 2020 WL 1966283, at *3 (Tex. App.—Amarillo Apr. 23, 2020, no pet.) (mem. op.). There is no such evidence here.

There is some evidence of cohabitation and limited representations to others that Pandozy and Gonzalez were married. While this proof may sometimes constitute circumstantial evidence of an agreement to be married, it is difficult to infer an agreement to be married from cohabitation in modern society. *Russell*, 865 S.W.2d at 933.[5] Thus, evidence of "holding out" must be particularly convincing to be probative of an agreement to be married. *Assoun v. Gustafson*, 493 S.W.3d 156, 160 (Tex. App.—Dallas 2016, pet. denied).[6]

Gonzalez relies on Sujansky and Romero's conclusory testimony about isolated instances to establish that she and Pandozy represented to others that they were married. But other than Romero's vague testimony about a single instance he

---

[5] We do not in any way imply that the record conclusively establishes cohabitation here. But we need not discuss this element because the other elements for establishing an informal marriage are not met. *See Danna v. Danna*, No. 05-00472-CV, 2006 WL 785621, at *1 (Tex. App.—Dallas March 29, 2006, no pet.) (mem. op.).

[6] The statutory requirement of representing marriage to others is synonymous with the judicial requirement of "holding out to the public." *In re Estate of Giessel*, 734 S.W.2d 27, 28 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The couple's reputation in the community as being married is a significant factor in determining the holding out element. *Fuller v. DeFranco,* No. 05-19-01203-CV, 2020 WL 6778408, at *8 (Tex. App.—Dallas Nov. 18, 2020, no pet.) (mem. op.).

recalled, Gonzalez adduced no evidence of specific instances in which she and/or Pandozy held themselves out as husband and wife and whether such instances were common; nor did she elicit any testimony from family members or friends that she and Pandozy had a reputation in the community for being married. *See, e.g.*, *Smith v. Deneve*, 285 S.W.3d 904, 910 (Tex. App.—Dallas 2009, no pet.) (evidence insufficient to show couple represented themselves as married to others when woman accepted ring, certain contracts listed couple as husband and wife, and couple were introduced as husband and wife, but there was no evidence whether such introductions were common or rare); *Castillon v. Morgan*, No. 05-13-00872-CV, 2015 WL 1650782, at *4 (Tex. App.—Dallas April 14, 2015, no pet.) (mem. op.) (evidence that woman and man represented themselves as married and insurance policies and homeowner information sheet listed them as husband and wife was insufficient to prove informal marriage when there was no evidence regarding frequency of representations or whether anyone in community saw policies or information sheet); *Danna*, 2006 WL 785621, at *1–2 (evidence of four occasions on which couple introduced themselves as husband and wife and AARP enrollment form signed by man referring to woman as his wife was insufficient to raise fact issue on representation as married to others). In short, Gonzalez did not demonstrate that she and Pandozy both consistently conducted themselves as husband and wife in the public eye or that the community viewed them as married.

Although Gonzalez presented some evidence relevant to the elements of an informal marriage, the evidence was contradicted and not sufficient to conclusively prove as a matter of law all vital facts in support of the existence of an informal marriage. The evidence is, therefore, legally sufficient to support the trial court's determination. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam).

The evidence is also factually sufficient to support the judgment. The evidence presented was, at best, conflicting. "Where the evidence is conflicting about the existence of an informal marriage, the conflict must be resolved by the factfinder." *J.G.S.*, 2019 WL 336543, at *3. The court resolved the conflicting evidence by finding that there was no informal marriage. Viewing all the evidence, we cannot conclude that the evidence is so weak or the trial court's finding is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *See Dow Chem. Co.*, 46 S.W.3d at 242.

## B.     Creditor of the Estate

Gonzalez also argues that she is an interested person because she is a creditor of the estate. The record does not support this contention.

Gonzalez's affidavit appears to claim an interest in certain mineral rights owned by an entity called "Ideas for Sale, Inc." Gonzalez claimed, but did not prove, that Pandozy owned an interest in this entity.

–15–

Gonzalez claims that she sold mineral interests to this entity and attached a Quitclaim deed to her affidavit reflecting this sale. Despite the Quitclaim's recitation that the interests were sold for $400, Gonzalez claims she was not compensated. She further claims that she and Pandozy agreed that the entity would hold the mineral interests "for safekeeping purposes" and that title to the interests would "revert back" to her in the future. The deed, however, does not reference any remainder interests or future divestments in favor of Gonzalez, nor did she introduce any other evidence to substantiate her claim.

The Estates Code does not define "creditor." As our sister court has observed, however, in legal parlance, "creditor" includes "[a] person or entity with a definite claim against another, especially a claim that is capable of adjustment and liquidation." *In re Davidson*, 485 S.W.3d 927, 930 (Tex. App.—Tyler 2016, no pet.) (citing BLACK'S LAW DICTIONARY (9th ed. 2009)). In the probate context, the legislature has defined "claims" as including (1) liabilities of a decedent that survive the decedent's death, including taxes, regardless of whether the liabilities arise in contract or tort or otherwise; (2) funeral expenses; (3) the expense of a tombstone; (4) expenses of administration; (5) estate and inheritances taxes; and (6) debts due a decedent's estate. TEX. EST. CODE ANN. § 22.005.

The evidence Gonzalez adduced does not establish that she has a claim. Therefore, the evidence is legally and factually sufficient to support the trial court's determination that Gonzalez is not a creditor of Pandozy's estate.

Because Gonzalez did not meet her burden to prove either an informal marriage to Pandozy or that she is a creditor of his estate, the trial court did not err in concluding that Gonzalez lacks standing as an interested person under the Estates Code. We resolve Gonzalez's first and second issues against her.

**The Heirship Determination**

Gonzalez's third issue argues the trial court erred by adopting the Collin County court's heirship findings. Specifically, Gonzalez argues that:

> The trial court's affirmation of the set aside order amounted to affirming a "void" judgment subject to direct or collateral attack. Yet, the Trial Court's affirmation of the heirship determination of [Pandozy's] estate was a final order . . . .

Gonzalez then cites case law concerning a court's plenary power, Texas motions for new trial, and FED. R. CIV. P. 60(b), concluding that "a party affected by a void judicial action need not appeal." This issue is waived for inadequate briefing. *See* TEX. R. APP. P. 38.1.

Moreover, to the extent that Gonzalez seeks to challenge the trial court's heirship determination, we have concluded that the trial court did not err in concluding that Gonzalez lacks standing to participate in the probate proceeding. Gonzalez's third issue is overruled.[7]

---

[7] While the order entered by the court states that it "affirms" the Collin county order, we treat this as an adoption of the order's terms.

–17–

**Attorney's Fees**

Gonzalez argues the trial court erred by awarding Maximillian's attorney's fees because he is not the executor or administrator of the estate and failed to prove any other statutory basis for recovering fees.

Although the trial court did not specify a statutory or contractual basis on which it awarded attorney fees, *see MBM Fin. Corp. v. The Woodlands Operating Co.,* 292 S.W.3d 660, 669 (Tex. 2009) ("Texas has long followed the 'American Rule' prohibiting [attorney's] fee awards unless specifically provided by contract or statute."), and Maximillian's pleading was likewise nonspecific as to the authority, Gonzalez did not specially except or otherwise challenge the basis for the fee request. *See Bullock v. Regular Veterans Ass'n of U.S., Post No. 76*, 806 S.W.2d 311, 315 (Tex. App.—Austin 1991, no writ) ("general allegation" of entitlement to attorney fees is sufficient if opposing party fails to specially except to lack of specificity). Accordingly, Maximillian may recover his fees on any available legal basis. *See Granbury Hospitality, Inc. v. State Bank of Texas*, No. 05-16-01509-CV, 2018 WL 3968498, at *7 (Tex. App.—Dallas Aug. 20, 2018, pet. denied) (mem. op.); *see also Deneve*, 285 S.W.3d at 916–17 (pleading sufficiently general to allow recipient to argue any legal basis to support attorney's fees).

Maximillian's motion requested that the court hold a hearing to determine Gonzalez's status as an interested person under the Estates Code. No particular type of pleading is required to bring a case under the Declaratory Judgments Act. *Robins*

*v. Wilder*, No. 05-97-00547-CV, 2000 WL 193359, at \*4 (Tex. App.—Dallas Feb. 18, 2000, pet. denied) (mem. op.); *Canales v. Zapatero*, 773 S.W.2d 659, 661 (Tex. App.— San Antonio 1989, no writ). Because the motion can be fairly characterized as an action "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations," we construe the substance of the motion as a request for relief under the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.002(b); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009).

In a suit under the Declaratory Judgments Act, a trial court may award reasonable and necessary attorney's fees as are just and equitable. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. *See Robins*, 2000 WL 193559, at \*4. Therefore, there is a statutory basis upon which the attorney's fees award may be properly predicated. We resolve Gonzalez's fourth issue against her.

### Probate of Purported Will

Gonzalez's fifth issue appears to argue that the trial court erred by not admitting one of the documents she attached to one of her post-hearing filings as Pandozy's last will and testament. The document in question is from the Dallas Central Appraisal District entitled "Exemption Application for Charitable Organization for 2017."

The record does not reflect, however, that an application for probate was ever filed, or that the requisite proof for probating a will was met. *See* TEX. EST. CODE

ANN. §§ 256.051-.053, 256.151-.153. We therefore resolve Gonzalez's fifth issue against her.

### III. CONCLUSION

Maximillian requests that we impose sanctions on Gonzalez pursuant to TEX. R. APP. P. 45. We deny this request. Having resolved all of Gonzalez's issues against her, we affirm the trial court's judgment.

/Dennise Garcia/
_____
DENNISE GARCIA
JUSTICE

190755F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

**JUDGMENT**

IN THE ESTATE OF RAFFAELE
MARTINI PANDOZY

No. 05-19-00755-CV

On Appeal from the Probate Court
No. 1, Dallas County, Texas
Trial Court Cause No. PR-18-03717-
1.
Opinion delivered by Justice Garcia.
Justices Schenck and Smith
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee
recover his costs of this appeal from appellant

Judgment entered February 22, 2021.